TOWNSHIP OF WINSLOW IN THE COUNTY OF CAMDEN, PLAINTIFF-RESPONDENT, v. BOARD OF EDUCATION OF THE CITY OF CAMDEN IN THE COUNTY OF CAMDEN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 15, 1969—Decided January 9, 1970.

Before Judges CONFORD, COLLESTER and KOLOVSKY.

*Mr. Frank E. Vittori* argued the cause for appellant *(Mr. Leonard A. Spector,* attorney).

*Mr. Charles A. Cohen* argued the cause for respondent *(Mr. Samuel L. Supnick,* attorney).

The opinion of the court was delivered by

CONFORD, P. J. A. D. For several years prior to 1968 the Camden Board of Education conducted a summer "day-camp" program for selected categories of school children, more fully discussed *infra,* in a county-park area in Berlin. During that period it was also engaged in plans to acquire a 70-acre tract, inclusive of a lake, in the Township of Winslow, for the permanent site of a somewhat expanded camp program. It did acquire the property, with the aid of federal funds, and had effected an outlay of about $200,000 for land and improvements when the consummation of the plan to change the site from Berlin to Winslow was blocked by the institu-

tion of this declaratory judgment action by Winslow ("township" hereinafter).

The Law Division held the acquisition of the land by the Camden Board of Education ("board", hereinafter) illegal; enjoined its use for the aforestated purpose; directed divestiture of title, and adjudged that in the meantime the property was to be held subject to all ordinances of the township as though owned by a private corporation and that it was taxable real estate from the date of acquisition. The board appeals.

The core holding of the trial court was that the board had acquired the land "for school purposes," contrary to *N. J. S. A.* 18:7–74, which restricts the extraterritorial location of lands acquired for such purposes to the "municipalities adjoining the school district."[1] Winslow does not adjoin Camden. The corresponding revised statutory section is now *N. J. S. A.* 18A:20–4.2. The board's position was that the acquisition was legally supported by *N. J. S. A.* 18:5–43, which authorized establishment of, and acquisition of land in or out of the municipality without restriction for "public playgrounds and recreation places." The current revised reference is *N. J. S. A.* 18A:20–17.

The board on this appeal for the first time raises a question as to the township's standing to challenge this project, but we think the general public interest requires reaching the meritorious question adjudicated below. We find the project a valid one and the acquisition of the land in Winslow therefor to have the statutory sanction cited above for establishment of "public * * * recreation places."

Much of the attack on the project and the rationale of the trial court was based on the language of certain formal documents executed for and on behalf of the board in connection with applications for federal funds available under the Elementary and Secondary Education Act of 1965, *P. L.* 89–10.

---

[1] The amount of land in other municipalities so to be used is limited to 50 acres, no more than 25 of which may be in a single such municipality without its consent.

§ 205(a)(1) specifies the permitted purposes of such grants as

> \* \* \* for programs and projects (including the acquisition of equipment and where necessary the construction of school facilities) (A) which are designed to meet the special educational needs of educationally deprived children in school attendance areas having high concentrations of children from low-income families \* \* \*.

The board's applications for federal funds recite that it will use the funds only for the purposes provided in the act. The board purported to intend to use the Winslow site for an "Outdoor Educational Program," under which 750 selected students would be transported daily to the site during the summer for lectures, arts and crafts, nature and science instruction, musical activities and physical education and development. Children would be selected for the program on the basis of their "educational disadvantage."

As against the emphasis on "educational" reflected by the foregoing representations, the testimony of the Camden superintendent of schools and of the local director of the project for the board bore more pointedly on the recreational aspect of the program and the breadth of its availability to all disadvantaged children. While, at Berlin, only public school children from grades 1 to 6 were included in the program, the board contemplated that in the future it might extend to pre-school age and parochial school children falling within the disadvantaged category.

As operated heretofore, the children selected for the program had a period of special remedial classroom instruction in Camden in the morning and were then transported in buses to the campsite. Attendance in the camp program was optional on the part of any child selected. At the campsite lunch was provided and out-of-door activities conducted, such as "swimming, hiking, nature study, arts and crafts, singing, \* \* \* dancing \* \* \* when it fits with music," and various kinds of games—reflecting, in composite, what is commonly known as a summer "day-camp" activity. Directing the ac-

tivities of the children were equal numbers of regular school teachers and "aides" or "counsellors," the latter generally college students. There was no instruction in any formal sense nor any tests or grades. The program contemplated for Winslow is essentially the same, with such expansion and improvement as ownership of the property will permit.

A building already constructed at the Winslow site contains children's locker rooms, shower rooms, toilets, a nurse's office, a kitchen, a mechanical room and storage areas. There are no classrooms. It is contemplated that eventually overnight sleeping facilities may be provided.

School officials of Camden testified, in effect, that educational and recreational purposes and functions are interrelated and mutually contributory. Common experience fortifies this observation, and the Legislature has recognized its truth by selecting local boards of education as appropriate agencies for the establishment of "public playgrounds and recreation places." Considered semantically, and in isolation, this project can be assimilated to the concept of "school purposes," prohibited in noncontiguous municipalities by *N. J. S. A.* 18:7–74. It can, however, in our view, also be accommodated within the broad concept of a public recreational area, within *N. J. S. A.* 18:5–43. The judicial function here, then, is to read the two pertinent statutes together and distill therefrom the pervading legislative intent as to which policy, the prohibitory or the permissive, should govern the fate of a noncontiguous extraterritorial project of this particular kind. In so doing we should be guided by the constitutional precept for liberal construction in their favor of laws concerning municipal corporations. *N. J. Const.,* Art. 4, § 7, par. 11. The particular justification for that approach in this instance is manifest from the salutary and progressively modern objectives of the program. Moreover, the problem of construction of our own statutes should not be beclouded by any consideration of whether the program as here conceived and projected falls outside the purposes of the federal aid legislation, although representations made by the board in seeking

federal funds are certainly probative as to its intent in relation to the nature of the project.

A clue to the purpose for legislative allowance of public "recreational areas" in noncontiguous localities while forbidding "school-purpose" projects therein may well be found in the facts of this case. It may have been deemed that boards of education in urban cities like Camden should have recourse to more rural areas for establishment of a recreational facility like this one, and that unrestricted freedom of choice of site would subserve that objective. But strictly school facilities, like school buildings, presented no occasion for departure from conventional notions as to proper location of such buildings.

The township argues that this project cannot properly be regarded as a *public* recreation place (it must be conceded it is not a "public playground," as commonly understood), since a public facility assertedly is open to all of the public for its enjoyment, not merely children of school age. But this is not necessarily so. There is no inherent reason why appropriately chosen segments of the public at large may not be selected by the responsible agency for enjoyment of a recreational facility particularly suited to such a segment — *e. g.,* programs for the middle-aged or elderly, or for the young or very young, or for housewives, etc. The instant project, we are credibly informed by the proofs, will be available to all children, whether or not regularly attending public schools, falling within the educationally or culturally disadvantaged category, from pre-school age to grade 6. And it seems particularly compatible with the legislative selection of boards of education for sponsorship of public recreational places that the restriction of one such establishment to persons of school age should not be deemed to detract from its public character. We thus conclude that the class here so chosen does not derogate from the public character of the enterprise.

We entertain no doubt that "recreational place" better describes the actual functions and purposes of the particular activity here involved, as a whole, than "school". It is cer-

tainly not a school in any conventional sense, notwithstanding that the activities are appropriately incidental to school administration in modern educational theory. But the fact that the Legislature did not contemplate that the existence of educational incidents or the use of school personnel should necessarily strike down a public recreational establishment sought to be validated under *N. J. S. A.* 18:5–43 is best attested by the allocation of the creation and maintenance of such establishments to local boards of education. The Legislature did not empower with one hand while destroying with the other.

The township points out that the board's brief does not expressly attack the trial court's finding that the acquisition by the board of this land was for school purposes. While this is so, we broadly construe the board's brief and oral argument as a plea to sustain the project as basically valid, even if defectively carried out (but we find no such defect). The board certainly contended below that the project was validly located in Winslow as a public recreational activity, and it would disserve the interests of justice and the public interest for this court to avoid a decision on the merits of the underlying legal question because of deficiencies, if any, in the board's appellate presentation.

We conclude that the lands in question were lawfully acquired by the board for the establishment of a public recreational place and that the judgment under review must be reversed in all respects.

Reversed; no costs.