691 A.2d 884

ATLANTIC CITY EDUCATION ASSOCIATION AND ATLANTIC CITY HEAD CUSTODIANS' ASSOCIATION, PETITIONERS–RESPONDENTS, v. BOARD OF EDUCATION OF THE CITY OF ATLANTIC CITY, RESPONDENT–APPELLANT.

KEYPORT TEACHERS' ASSOCIATION, PETITIONER–RESPONDENT, v. BOARD OF EDUCATION OF THE BOROUGH OF KEYPORT, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 17, 1996—Decided April 17, 1997.

Wecker, J.S.C. (temporarily assigned), filed concurring opinion.

Before Judges STERN, HUMPHREYS and WECKER.

*George G. Frino* and *Joseph M. Jacobs*, attorneys for appellant Board of Education of the City of Atlantic City (*Mr. Frino*, on the brief).

*Perillo & Rosenberger*, attorneys for appellant Board of Education of the Borough of Keyport (*Salvatore Perillo*, on the brief).

*Zazzali, Zazzali, Fagella & Nowak*, attorneys for respondents Atlantic City Education Association, Atlantic City Head Custodi-

ans' Association and Keyport Teachers' Association (*Richard A. Friedman*, on the brief).

*Peter Verniero*, Attorney General of New Jersey, attorney for State Board of Education (*Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Arlene Goldfus Lutz*, Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

HUMPHREYS, J.A.D.

▮ The State Board of Education decided that the health benefits plans established by the Atlantic City and Keyport Boards of Education constituted self-insurance, contrary to *N.J.S.A.* 18A:16–13. This statute requires boards of education to contract with an insurance company for such benefits. The Atlantic City and Keyport Boards appeal the Commissioner's decision. They contend that the statute permits such plans and that the State Board's decision amounts to illegal rule making in violation of the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to 14B–15. We hereby consolidate both appeals.

The Atlantic City Board has since contracted with an insurance company and has advised us that their appeal is now moot. Consequently, we dismiss their appeal.

As to the Keyport Board, we have thoroughly reviewed the record and arguments presented. We affirm. We find that the Keyport plan is basically self-insurance and not authorized by statute.

I

The Keyport Board contracted with an insurance agency to administer its program "by providing claims processing, claims investigation and adjustment, statistical reports and a variety of other management and administrative services." The Keyport Board would make periodic contributions to the agency. From these contributions the agency would pay employees directly for

their claims. The Keyport Board also purchased excess insurance from a licensed New Jersey insurance company. The insurance company would reimburse the Board for any claim over a stipulated amount or for any excess over the annual total cap for all claims.

The Keyport Board contends that substantial savings have resulted. The Teachers Association disagrees and the issue was not resolved below. The Keyport Board also asserts that the benefits provided by the new plans are identical to those provided by predecessor plans. The Association again disagrees and has filed a grievance on this issue. The grievance is before an arbitrator and is in abeyance pending the resolution of this case.

## II

The central issue is the meaning of *N.J.S.A.* 18A:16–13, enacted initially in 1979. The statute provides:

Any local board of education may directly or indirectly through a trust fund or otherwise *enter into contracts* of group life, accidental death and dismemberment, hospitalization, medical, surgical, major medical expense, minimum premium insurance policy or health and accident insurance *with any insurance company or companies authorized to do business in this State*, or may contract with a nonprofit hospital service, medical service or health service corporation with respect to the benefits which they are authorized to provide respectively. Such contract or contracts shall provide any one or more of such coverages for the employees of the local board of education and may include their dependents. A local board of education may enter into a contract or contracts to provide drug prescription and other health care benefits, or enter into a contract or contracts to provide drug prescription and other health care benefits as may be required to implement a duly executed collective negotiations agreement, or as may be required to implement a determination by a local board of education to provide such benefit or benefits to employees not included in collective negotiations units. Nothing herein contained shall be deemed to authorize coverage of dependents of an employee under a group life insurance policy or to allow the issuance of a group life insurance policy under which the entire premium is to be derived from funds contributed by the insured employee.

[*N.J.S.A.* 18A:16–13 (emphasis added).]

In a decision in 1984, we considered the issue presently before us. *See Irvington Educ. Ass'n v. Board of Educ.*, A–4805–82T5 (App.Div. February 9, 1984) (reported at 1984 *S.L.D.* 1939). In

that case, the Commissioner of Education, relying on a June 1982 Attorney General's opinion, concluded that without specific statutory authorization, a local Board could not establish a self-funded health benefits plan.

The State Board of Education summarily affirmed the Commissioner's decision. We affirmed the State Board and stated:

[t]he law governing a local board's power in this instance is far from clear, and persuasive arguments can be made on both sides of the question. On balance, however, we find that the lack of express authority, the availability of viable substitutes, the absence of a uniform scheme of statutory protection for such self-insurance funds and the legislative history in analogous situations all favor our affirmance of the administrative determination.

[1984 *S.L.D.* at 1940.]

We added that "without a further showing of need by the [local] Board for direct payment of health benefits" we decline to "infer the power to pay the same from the general power clause of *N.J.S.A.* 18A:11–1(d)." *Id.* at 1944.

The local Board in *Irvington* and the Keyport Board here relied on the decision in *Teamsters Local 331 v. Atlantic City,* 191 *N.J.Super.* 404, 467 *A.*2d 264 (Ch.Div.1981), *aff'd o.b.,* 191 *N.J.Super.* 394, 467 *A.*2d 259 (App.Div.1983). In that case, the court held that the city could contribute to a union's health and welfare fund. In *Irvington,* we concluded for the reasons stated therein that the *Teamsters* decision is inapposite. We are still of the same view.

We stayed our decision in *Irvington* until the end of the contract year in order to permit either the "local Board or the *amicus* New Jersey School Boards' Association to apply to the Legislature for a specific authorization for the disputed program." *Id.* at 1982–83. The Legislature did not enact and has not since enacted such legislation.

The Legislature is assumed to be "thoroughly familiar with its own enactments and with statutory interpretation provided by the courts." *Monaghan v. Holy Trinity Church,* 275 *N.J.Super.* 594, 602, 646 *A.*2d 1130 (App.Div.1994). The Legislature was likely aware of the *Irvington* decision. Although the opinion was not published in the official court reports, it was reported in the school

law decisions, 1984 *S.L.D.* 1939, and cited in a reported case: *Bloomfield Bd. of Educ. v. Bloomfield Educ. Ass'n.,* 251 *N.J.Super.* 379, 386, 598 *A.*2d 518 (App.Div.1990), *aff'd o.b.,* 126 *N.J.* 300, 598 *A.*2d 517 (1991). Moreover, the Teacher's Association represents that the *Irvington* case "was and is well known in the school community." Also, the Commissioner stated in his decision in the present case that the *Irvington* case was "well known, widely referenced ... and has been fully briefed by the parties herein...." The Legislature's inaction, under these circumstances, is "some evidence of legislative support for the judicial construction" in *Irvington. See Massachusetts Mutual v. Manzo,* 122 *N.J.* 104, 116, 584 *A.*2d 190 (1991).

Further, the legislature in 1995 enacted a statute which amended *N.J.S.A.* 18A:16–13. (L.1995, c. 74). The amendment did not alter the decision in *Irvington* and this is "some evidence of legislative support" for the statutory construction in *Irvington. See Massachusetts Mutual, supra,* 122 *N.J.* at 116, 584 *A.*2d 190. Additionally the 1995 statute authorized school boards which had joint self insurance pools with other school districts to include health insurance in these pools. L.1995 c. 74 (codified as amended at *N.J.S.A.* 18A:18B–2(f)). The failure of the legislature in the 1995 Act to extend this authorization to all school boards is further evidence that the legislature has not authorized self insurance for all school boards.

 Furthermore, a local Board of Education has only limited authority. A local Board is a creature of the State and may exercise only those powers granted to it by the Legislature either expressly or by necessity or fair implication. *Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ.,* 79 *N.J.* 574, 579, 401 *A.*2d 681 (1979). Where there is reasonable doubt as to whether the Legislature has granted such a power, that power should not be implied. *In re Closing of Jamesburg High School,* 83 *N.J.* 540, 549, 416 *A.*2d 896 (1980). Additionally, a local Board's authority to act should not be implied if local action would "adversely affect[ ]

the legislative scheme." *Fair Lawn, supra,* 79 *N.J.* at 586, 401 *A.*2d 681.

In *Fair Lawn, supra,* the Court held that local school boards lack the power to adopt a supplemental retirement plan which would be contrary to the actuarial assumptions of the state-wide Teachers' Pension and Annuity Fund. *Id.* at 586–87, 401 *A.*2d 681. The Court stated that while it understood the local Board's goal was to reduce expenses, approval for such a plan "must come from the Legislature." *Id.* at 587, 401 *A.*2d 681.

In the present case, the statute plainly provides that the local Board must contract with a licensed insurance company to provide a health benefits plan. The Board has not done so. The Board's contract with an insurance company for excess coverage is to protect the Board, not to provide benefits to the employees. Consequently, here, as in *Fair Lawn,* approval of the local Board's plan to deviate from the statute must come from the Legislature.

### III

We find no merit in the position of the local Board that the Commissioner is engaging in administrative rule making without complying with the procedures set forth in the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –15. We agree with the Commissioner's conclusion that statutory interpretation by him, which is "consistent with prior court holdings in the context of the dispute before him pursuant to *N.J.S.A.* 18A:6–9 [which invests the Commissioner with jurisdiction over school-law disputes]," is not illegal rule making. *See generally Metromedia, Inc. v. Division of Taxation,* 97 *N.J.* 313, 478 *A.*2d 742 (1984); *Crema v. New Jersey Dept. of Envt'l Protection,* 94 *N.J.* 286, 463 *A.*2d 910 (1983). Additionally, the Administrative Procedure Act specifically does not apply to "agency decisions and findings in contested cases." *See N.J.S.A.* 52:14B–2(e).

Further, the Legislature has conferred upon the Commissioner the power and duty to interpret the school laws. *See N.J.S.A.* 18A:6–9; *Wall Township Educ. Ass'n v. Board of Educ.,* 149 *N.J.Super.* 126, 130, 373 *A.*2d 425 (App.Div.1977) (construction of a

school law lies within the jurisdiction of the Commissioner); *see also Capodilupo v. West Orange Township Educ. Bd.*, 218 *N.J.Super.* 510, 515, 528 *A.*2d 73 (App.Div.) (the State Board did not engage in rule making when it construed the pertinent school law to require that a tenured teacher had preference over a non-tenured teacher even though the tenured teacher had no experience in the disputed position), *certif. denied*, 109 *N.J.* 514, 537 *A.*2d 1300 (1987). We concluded in *Capodilupo, supra*, that the State Board was entitled to interpret liberally the school laws according to well established principles favoring tenure. 218 *N.J.Super.* at 515, 528 *A.*2d 73.

In short, we conclude, as we did in *Irvington*, that no persuasive reasons have been advanced as to why we should disturb long standing administrative and judicial constructions of the statute. The interpretation and construction of a statute by an agency responsible for its implementation is entitled to considerable weight. *Kletzkin v. Board of Educ.*, 136 *N.J.* 275, 278, 642 *A.*2d 993 (1994). It may be that the Legislature has decided that self-insurance by a local Board of Education offers more opportunities for favoritism, corruption and undue expense than a contract with a licensed insurance company. In any event, the State Board's decision is not arbitrary, capricious or unreasonable. The decision must therefore be upheld under accepted principles of judicial review of decisions of administrative agencies. *E.g., Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965). These principles are especially applicable in view of the broad authority of the Commissioner of Education and the State Board of Education in school matters. *See Kletzkin, supra*, 136 *N.J.* at 278, 642 *A.*2d 993 (the court should not interfere with a decision by the State Board unless it is "palpably arbitrary").

As to Keyport, the State Board's decision is affirmed; as to Atlantic City, the appeal is dismissed as moot.

WECKER, J.S.C. (temporarily assigned) concurring.

I concur in the result reached by the majority affirming the State Board's decision denying permission for the Keyport Board

of Education to continue its contractual arrangements to provide health insurance benefits to its employees. However, I reach that result on narrower grounds than does the majority.

The Keyport Board's plan combines self-insurance, administered under contract with a private insurance agency, with a policy for excess coverage provided by a commercial insurance carrier. In response to our request at oral argument, the Keyport Board provided additional information regarding the caps on Board exposure under the excess policy purchased during the contract year 1992–93. As I understand the response, our concerns are not fully satisfied. Keyport is responsible for the first $20,000 of each individual's claim in the contract year. The excess carrier is responsible above the first $20,000, up to $1 million. However, while Keyport's aggregate liability for all claims was capped at $773,548 for the contract year vis-a-vis the carrier, the Board's response states:

> the total of all claims beyond the $773,548 threshold are covered by the *aggregate excess* insurance *in the amount of one million.* There are therefore two, independent levels of excess coverage protecting Keyport.
>
> [emphasis added.]

It is thus apparent that if aggregate health benefits owed to Keyport Board employees exceed $1 million, the Keyport Board will be liable for the balance. Whereas excess coverage of $1 million for any one claim may appear generous, if two or more employees have separate catastrophic medical expenses in one year, the excess insurance could be grossly inadequate.

Moreover, Keyport has not compared its exposure for employee health benefits under its plan with the exposure it would face under the State Health Benefits Plan (SHBP). *N.J.S.A.* 52:14–17.25 *et seq.* My understanding is that under SHBP, the local school board is able to budget for a set expense per employee per year. Each employee and participating family member is promised lifetime benefits up to $1,000,000,[1] *N.J.S.A.* 52:14–17.29, and

---

[1] After a deductible per person per year.

the employer is not responsible to the employee beyond that maximum benefit amount.

Keyport relies in part upon the express statutory authorization for private self-insurance plans, *N.J.S.A.* 18A:18B–2, which are subject to regulation under *N.J.S.A.* 18A:18B–4, 18A:18B–7, and rules and regulations promulgated by the Commissioner of Insurance thereunder. Chapter 18B clearly contemplates the Commissioner's power and authority to disapprove plans that do not adequately protect the financial integrity of the school board or, by inference, the medical insurance protection afforded its employees. As the Commissioner of Education found,

... no analogy can be made between the SHBP and local board self-insurance in terms of the former serving as tacit authorization for the latter, in that the SHBP is protected by a hugh risk-sharing pool and the full backing of State resources while local board plans must gamble on the loss experience and fiscal stability of a single, relatively small entity. [287a].

The relevant inquiry is not the savings realized by the Keyport Board in claims and premiums paid in any past contract year, but its exposure in any future year.

Because the Keyport Board has not shown adequate financial protection, the State Board's decision disallowing its plan must be affirmed.