37 A.3d 536

TRACEE EDMONDSON, PETITIONER–APPELLANT, v. BOARD OF EDUCATION OF THE BOROUGH OF ELMER AND BOARD OF EDUCATION OF THE TOWNSHIP OF PITTSGROVE, SALEM COUNTY, RESPONDENTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 31, 2011—Decided March 5, 2012.

Before Judges PARRILLO,[1] GRALL and SKILLMAN.

*Tracee Edmondson,* appellant, argued the cause pro se.

*Jane B. Capasso* argued the cause for respondent Board of Education of the Borough of Elmer (*Lipman, Antonelli, Batt, Gilson, Malestein, Rothman & Capasso,* attorneys; *Ms. Capasso,* on the brief).

*Kerri A. Wright* argued the cause for respondent Board of Education of the Township of Pittsgrove (*Porzio, Bromberg & Newman, P.C.,* attorneys; *Vito A. Gagliardi, Jr.,* of counsel; *Ms. Wright* and *Raquel S. Lord,* on the brief).

*Paula T. Dow,* Attorney General, attorney for respondent Commissioner of Education (*Joyce D. Williams,* Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

GRALL, J.A.D.

Tracee Edmondson appeals from a final decision of the Commissioner of Education dismissing her challenge to an agreement expanding a sending-receiving relationship between the Pittsgrove Township Board of Education and the Board of Education of the Borough of Elmer (collectively the Boards). The municipalities are in Salem County, and they border one another. The Commissioner concluded that this arrangement does not exceed the authority granted to the Boards in *N.J.S.A.* 18A:38–8, amount to a de facto regionalization that must be accomplished in accordance with *N.J.S.A.* 18A:13–34, or permit the Commissioner's intervention on the ground that Elmer's local school district is a non-

---

[1] Judge Parrillo did not participate in oral argument. However, the parties consented to his participation in the decision. *R.* 2:13–2(b).

operating district, *N.J.S.A.* 18A:8–43 to –49. We affirm those determinations.

The facts are not disputed. Since 1976, these Boards have had a sending-receiving relationship—one in which students in the sending school district, in this case Elmer, are educated in schools operated by the receiving school district, in this case Pittsgrove. *N.J.S.A.* 18A:38–8. The sending district pays the receiving district tuition for each student involved. *Ibid.*

The Boards' arrangement in place between 1976 and 2003 covered Elmer students in grades seven through twelve. In 2003, it was expanded to include students in grades five through twelve. On March 11, 2010, the Elmer Board unanimously approved another expansion, one which provides for all of Elmer's children to be educated in schools operated by Pittsgrove.

To absorb the additional students, the Boards planned for Pittsgrove to lease the school in Elmer formerly operated by the Elmer district for Elmer students attending kindergarten through grade four. Prior to the school budget vote in April 2010, the Pittsgrove Board mailed a flyer describing the expansion and explaining that it would bring the district $600,000 and a fifth school building.

On April 27, 2010, the superintendents of both districts jointly gave notice of the plan to the parents of students living in Pittsgrove and Elmer. The notice explains the rationale for the changes necessitated by the "full send-receive" relationship. Fifth grade classes, previously accommodated in the Pittsgrove junior high school, would be held in a grammar school in Pittsgrove, which was viewed as a better setting for fifth graders. By leasing the school, the Elmer district would no longer operate, Pittsgrove would accommodate all first and second grade classes in that school, and all third through fifth grade classes in another school in Pittsgrove.

In that notice, the superintendents invited questions and comments. On June 15 and 21, 2010, respectively, the Elmer and

Pittsgrove Boards approved the full sending-receiving relationship and the lease to Pittsgrove.

Edmondson is a resident of Pittsgrove, and she filed a challenge with the Commissioner before the Pittsgrove Board approved the full sending-receiving agreement and essential lease. Thereafter, the Elmer Board answered, and the Pittsgrove Board moved to dismiss. Edmondson sought an expedited hearing and, on several occasions, various requests for temporary injunctive relief. The Commissioner transferred the contested case to the Office of Administrative Law for disposition, *N.J.S.A.* 52:14B–1 to –15; *N.J.S.A.* 52:14F–1 to –13. Subsequently, the Administrative Law Judge (ALJ) held a conference and gave Edmondson additional time to file a response to the motion to dismiss. The ALJ granted the motion to dismiss on the ground that the expansion of the sending-receiving agreement was authorized by *N.J.S.A.* 18A:38–8 and denied Edmondson's applications for emergent relief.

Edmondson filed exceptions to the ALJ's decision, and after considering the record in light of those exceptions and the Boards' opposition, the Commissioner upheld the ALJ's determinations. As of the date of the Commissioner's decision, the lease under which Pittsgrove planned to take possession of and operate the school in Elmer was under review by the Office of School Facilities in the Department of Education. Accordingly, the lease is not before us.

We begin our review of the Commissioner's determinations with his conclusion that the sending-receiving relationship is within the authority of these Boards. The Commissioner has "jurisdiction to hear and determine ... all controversies and disputes arising under the school laws," *N.J.S.A.* 18A:6–9, and supervisory authority over sending-and-receiving relationships. *Bd. of Educ. v. Bd. of Educ.*, 204 *N.J.Super.* 508, 513, 499 *A.2d* 523 (App.Div.1985), *certif. denied*, 103 *N.J.* 469, 511 *A.2d* 650 (1986). In reviewing the Commissioner's determinations of the issues in this case, we defer to the "agency's interpretation of the statute unless it is 'plainly unreasonable,'" "contrary to the statutory

language" or "undermines the Legislature's intent." *Reilly v. AAA Mid–Atlantic Ins. Co. of N.J.*, 194 *N.J.* 474, 485, 946 *A.*2d 564 (2008) (quoting *In re N.J. Tpk. Auth. v. Am. Fed'n of State, County & Mun. Employees, Council 73*, 150 *N.J.* 331, 351, 696 *A.*2d 585 (1997)); *see TAC Assocs. v. N.J. Dep't of Envtl. Prot.*, 202 *N.J.* 533, 541, 998 *A.*2d 450 (2010) (noting that interpretations "by agencies empowered to enforce [statutes] are given substantial deference").

The question of whether this sending-receiving relationship exceeds the scope of the Boards' delegated authority is one of statutory interpretation. We must consider the statute's plain meaning, in light of related statutes, to reach a sensible interpretation that is consistent with the Legislature's intent. *In re Adoption of N.J.A.C. 7:15–5.24(b)*, 420 *N.J.Super.* 552, 564, 22 *A.*3d 94 (App.Div.), *certif. denied*, 208 *N.J.* 597, 34 *A.*3d 779 (2011); *see Nat'l Waste Recycling, Inc. v. Middlesex County Improvement Auth.*, 150 *N.J.* 209, 223, 695 *A.*2d 1381 (1997); *Schierstead v. City of Brigantine*, 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959).

 The Commissioner, of course, may not approve an action by local school boards that exceeds their delegated authority. The board of a local school district "is a creature of the State and may exercise only those powers granted to it by the Legislature either expressly or by necessity or fair implication." *Atlantic City Educ. Ass'n v. Bd. of Educ.*, 299 *N.J.Super.* 649, 654–55, 691 *A.*2d 884 (App.Div.), *certif. denied, sub nom. Keyport Teachers' Ass'n v. Bd. of Educ.*, 152 *N.J.* 192, 704 *A.*2d 22 (1997); *see Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ.*, 79 *N.J.* 574, 579, 401 *A.*2d 681 (1979). Authority is not implied where its exercise would be inconsistent with or undermine the purpose of the enabling legislation, *Atlantic City Educ. Ass'n, supra*, 299 *N.J.Super.* at 654–55, 691 *A.*2d 884, but authority that is reasonably necessary to effectuation of the Legislature's purpose is implied. *In re Stormwater Mgmt. Rules*, 384 *N.J.Super.* 451, 461, 894 *A.*2d 1241 (App.Div.), *certif. denied*, 188 *N.J.* 489, 909 *A.*2d 724 (2006).

■ We agree with the Commissioner that this sending-receiving relationship is within the scope of the Boards' statutory authority. Indeed, the statutes do not support a contrary determination.

In Title 18A, the Legislature has delegated broad general authority to the boards of local school districts. *N.J.S.A.* 18A:11–1 enumerates that power and authority, directing in pertinent part that the board shall:

c. Make, amend and repeal rules, not inconsistent with this title or with the rules of the state board, ... for the government and management of the public schools and public school property of the district ...; and

d. Perform all acts and do all things, consistent with law and the rules of the state board, necessary for the lawful and proper conduct, equipment and maintenance of the public schools of the district.

Article 2 of Chapter 20, *N.J.S.A.* 18A:20–2 to –22, addresses real and personal property of the district. Pursuant to *N.J.S.A.* 18A:20–2, a board of education of any district may "acquire, by purchase or lease, receive, hold in trust and sell and lease real estate and personal property" except as restricted in Title 18A. *See also N.J.S.A.* 18A:20–8.2 (authorizing a board to lease a school it does not need).

The property may be located in a municipality that adjoins the district. *N.J.S.A.* 18A:20–4.2(a). In pertinent part, *N.J.S.A.* 18A:20–4.2 provides:

The board of education of any school district may, *for school purposes:*

(a) Purchase, take and condemn lands within the district *and lands* not exceeding 50 acres in extent *without the district but situate in a municipality or municipalities adjoining the district,* but no more than 25 acres may be so acquired in any one such municipality, without the district, except with the consent, by ordinance, of such municipality;

. . . .

(c) Erect, *lease for a term* not exceeding 50 years, enlarge, improve, repair or furnish buildings . . . .

. . . .

[ (Emphasis added).]

*See Twp. of Winslow v. Bd. of Educ.,* 108 *N.J.Super.* 215, 217, 260 *A.*2d 529 (App.Div.), *certif. denied,* 55 *N.J.* 450, 262 *A.*2d 704 (1970) (discussing the former statutory provision, recognizing its

incorporation in *N.J.S.A.* 18A:20–4.2, and applying it in a case involving property not located within the borders of the district or an adjoining municipality).

Finally, statutes in Article 2 of Chapter 38, *N.J.S.A.* 18A:38–8 to –24, specifically address sending-receiving relationships. Chapter 38 covers the multiple aspects of the sending-receiving relationship—establishment, termination and severance, facilities, membership of the receiving district's school board and tuition paid to the receiving district by the sending district. *Ibid.*

*N.J.S.A.* 18A:38–8 permits

the board of education of any school district having the necessary accommodations [to] receive ... pupils from another district not having sufficient accommodations, at rates of tuition fixed as in [*N.J.S.A.* 18A:38–8 to –24] provided.

Edmondson's primary challenge to this sending-receiving relationship is that it is not authorized by *N.J.S.A.* 18A:38–8. Recast in the statutory language, Edmondson argues that this agreement is not permissible because, prior to the leasing of the school by Pittsgrove, Pittsgrove was not a district "having the necessary accommodations [to] receive ... pupils from" Elmer, and Elmer was not a district "not having sufficient accommodations" to educate the students it then had in kindergarten through fourth grade. Thus, Edmondson's claim is premised on her conclusion that *N.J.S.A.* 18A:38–8 requires an assessment of the "accommodations" the districts "have" without counting accommodations that it will have with the lease of the school to which the districts agreed in order to expand their sending-receiving relationship.[2]

In our view, the premise of the argument is inconsistent with the Legislature's evident purpose in adopting the statutory scheme, which is to permit, not bar, such arrangements. *N.J.S.A.* 18A:38–8 does not specify the point-in-time for assessing the adequacy of a participating district's accommodations. Thus, an

---

[2] Edmondson also suggests the schools Pittsgrove utilizes to educate Pittsgrove and Elmer students must be located in Pittsgrove. We reject this argument because *N.J.S.A.* 18A:20–4.2 authorizes local boards to utilize property for school purposes that is situated in an adjoining municipality.

interpretation that is most reasonable and consistent with the Legislature's purpose is needed.

Another provision of Chapter 38 indicates the Legislature's approval of a receiving district acquiring additional accommodations that are necessary for its participation in a sending-receiving relationship already in place. Pursuant to *N.J.S.A.* 18A:38–20, a district "furnishing elementary and high school education or either thereof for the pupils of another school district" and finding itself in need of "additional facilities," may condition a sending-receiving arrangement on the sending district's agreement not to educate the students "in its own or another district during the term" of the agreement. *See ibid.* (limiting the term of such an agreement to ten years). Had the Legislature intended to require an assessment based on current capacity, it presumably would have required termination of an existing sending-receiving relationship when the receiving district's accommodations are no longer adequate.

In our view, *N.J.S.A.* 18A:38–8 is most reasonably understood to permit an assessment of adequacy in light of plans for necessary adjustments, including lease or acquisition of property situated in a sending district that adjoins the municipality, as authorized by *N.J.S.A.* 18A:20–4.2. This construction is consistent with *N.J.S.A.* 18A:38–20, and it is the most reasonable one given the nature of the problem *N.J.S.A.* 18A:38–8 is designed to address. Accommodating pupils at the expense of taxpayers necessarily requires a forward-looking approach. It requires projections about not only necessary space, but also the essential desks, books, support staff, teachers and administrators. It is not reasonable to assume that the Legislature intended to permit sending-receiving relationships only if the pupils from the sending district can be absorbed without any change in the accommodations available in both districts prior to the districts' consideration of a sending-receiving relationship.

Moreover, a construction of *N.J.S.A.* 18A:38–8 that focuses on facilities that will be available to the receiving district is more

consistent with the Legislature's focus on cost effective school arrangements. In recent years, the Legislature has made efforts to contain excessive spending on administrative costs that negatively impacts the effectiveness and efficiency of education. *See generally N.J. Ass'n of Sch. Bus. Officials v. Davy*, 409 *N.J.Super.* 467, 472–80, 978 *A.*2d 295 (App.Div.2009) (discussing comprehensive reform undertaken in 2006 that led to significant revisions of the statutory law affecting municipal government and school districts in 2007). One component of the reform includes executive county superintendents, whose responsibilities include recommending appropriate consolidations of school districts. *N.J.S.A.* 18A:7–8.

As recently as June 2009, the Legislature devised a plan that responds to, but does not prohibit, arrangements where, as here, one of the districts in a sending-receiving relationship no longer operates any school. *N.J.S.A.* 18A:8–43 to –49; *N.J.S.A.* 18A:7–8 (*L.* 2009, *c.* 78 §§ 1–11). In general terms, these statutes direct the executive county superintendent to eliminate these "non-operating districts," in accordance with a plan and schedule approved by the Commissioner, providing for merger with the district "best able to accommodate the merger." *N.J.S.A.* 18A:8–43, –44; *N.J.S.A.* 18A:7–8g.

In recognizing the existence of sending-receiving relationships that leave a non-operating district and directing merger of non-operating districts, the Legislature did not amend Chapter 38 of Title 18A to prohibit arrangements that result in creation of a non-operating district. Rather, the Legislature addressed the consequences in a way that provides another avenue for reaching the goal of consolidation through mergers that are consistent with the thorough and efficient education of children. *N.J. Const.* art. VIII, § 4, ¶ 1.

Here, Elmer's Board was considering whether it could continue operation of its single school, and Pittsgrove's Board had come to see advantages in grouping fifth grade students in a grammar school setting, which was more appropriate for them than being

housed in the Pittsgrove Middle School with children of middle school age. By renting the school Elmer was seeking to discontinue, Pittsgrove would be able to accommodate all the pupils of both districts as follows: kindergarten classes held in one Pittsgrove school; first and second grade classes held in the Elmer school leased to and operated by Pittsgrove; and all third through fifth grade classes in another Pittsgrove school.

The Commissioner concluded that this arrangement was within the authority expressly and impliedly delegated to the Boards. For the reasons set forth above, we agree.

We have also considered and rejected an additional argument advanced by Edmondson that does not warrant extended discussion. *R.* 2:11–3(e)(1)(E). She contends that this arrangement is a de facto regionalization not accomplished in compliance with *N.J.S.A.* 18A:13–34. The statutory schemes are distinct, and this expansion of a sending-receiving relationship is governed by the statutes that we have discussed above.

There are two tangential matters we must address. First, Edmondson has objected to the Commissioner's handling of her applications for temporary relief, but our decision on the merits moots those issues. Accordingly, we do not address those objections. Second, after oral argument on this appeal, Edmondson filed a motion to amend her pleadings and expand the scope of this appeal to include additional parties. We reserved decision on that motion pending completion of this opinion and now deny it. This court generally does not address issues that have not been raised in the proceeding from which an appeal is taken. *Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973). There is no reason to depart from that approach in this case.

Affirmed.