**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1985-16T1

IN THE MATTER OF THE
PETITION OF THE VILLAGE
OF LOCH ARBOUR TO FORM
AN INDEPENDENT SCHOOL
DISTRICT.

_____

Argued April 16, 2018 – Decided October 18, 2018

Judges Messano, O'Connor and Vernoia.

On appeal from the New Jersey Department of Education.

Michael Jay Gross argued the cause for appellant/cross-respondent Township of Ocean Board of Education (Kenney Gross Kovats & Parton, attorneys; Michael Jay Gross, on the brief).

Martin J. Arbus argued the cause for respondent/cross-appellant Township of Ocean (Arbus, Maybruch & Goode, LLC, attorneys; (Martin J. Arbus, on the brief).

James M. Hirschhorn argued the cause for intervenor-respondent Loch Arbour Board of Education and Village of Loch Arbour (Sills Cummis & Gross, PC, attorneys; James M. Hirschhorn, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Department of Education (Caroline G. Jones, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellants Ocean Township and the Ocean Township Board of Education appeal from the Board of Education's Commissioner's decision authorizing the Village of Loch Arbour (Loch Arbour) to hold a referendum on the question of whether it should withdraw from the Ocean Township School District (OTSD). We affirm.

I

Loch Arbor became a municipality when incorporated as a village in 1957. Before that, the territory that ultimately became Loch Arbour was part of and included within the boundaries of Ocean Township. Despite becoming a municipal entity separate from Ocean Township after its incorporation, in accordance with the law at that time, Loch Arbour remained a part of Ocean Township's school district. See N.J.S.A. 18A:5-1.1.[1] Thus, the children of Loch Arbour who attended public school attended school in Ocean Township's school district.

---

[1] In pertinent part, N.J.S.A. 18A:5-1.1 stated: "[e]ach township, city, incorporated town and borough shall be a separate local school district, except as hereinafter provided . . . but each incorporated village shall remain a part of the district in which it is situated at the time of its incorporation."

2

In 2015, Loch Arbour had only seventeen school-age students residing in its municipality. Pursuant to N.J.S.A. 18A:8-5 and N.J.S.A. 18A:8-6, Loch Arbour filed a request with the Monmouth County Executive County Superintendent (ECS) seeking that he investigate the feasibility of Loch Arbour: (1) ceasing to be a part of Ocean Township's school district; and (2) establishing its own independent but non-operating school district, so that it could enter into send-receive relationships with the West Long Branch school district, where Loch Arbour students in grades kindergarten through eight would attend school, as well as with the Shore Regional school district, where Loch Arbour students in grades nine through twelve would enroll in school. In accordance with N.J.S.A. 18A:38-19, Loch Arbour's board of education intended to pay the boards of education of the two receiving districts a tuition rate in an amount not in excess of the actual cost per pupil. See ibid.

Before the ECS's review, the OTSD and Loch Arbour retained experts, who each prepared feasibility studies and submitted them to the ECS. Thereafter, the ECS issued a report setting forth his findings and conclusions, the highlights of which were as follows.

The ECS found all three districts provide a "quality education" to their respective students. He noted the Department of Education designated the Ocean Township, West Long Branch, and Shore Regional school districts as

3

"high performing," insofar as meeting core curriculum content standards. Therefore the educational impact of Loch Arbour's students withdrawing from the OTSD and enrolling in schools in the West Long Branch and Shore Regional school districts was essentially non-existent. The ECS also determined there would "be insignificant racial impact on the involved districts" if the seventeen Loch Arbour students were to withdraw from the OTSD and enroll in the other two school districts. We note OTSD's feasibility expert arrived at the same conclusion.

The ECS next analyzed the financial impact upon the OTSD if Loch Arbour's students were to withdraw from its district. Before addressing his findings, we note that, for the 2015-16 school year, the school tax levy imposed in the aggregate upon Ocean Township's residents was $60,054,172 and upon Loch Arbour's residents $2,014,486. Ocean Township's school tax levy was apportioned between Loch Arbour and Ocean Township on the basis of equalized assessed value of taxable property. However, Loch Arbour's taxpayers' contribution was $125,900 per pupil for the seventeen Loch Arbour students that were to attend OTSD schools during the 2015-16 school year, in contrast to the $16,300 Ocean Township taxpayers paid per pupil.

Loch Arbour's position was that if it were an independent, albeit non-operating, school district, it could send its students to the West Long Branch

4

and Shore Regional school districts at a far lower cost, because N.J.S.A. 18A:38-19 limits a sending district's costs to educate its children to the actual cost of educating a pupil in the receiving district.[2]  In fact, Loch Arbour had already entered into send-receive agreements with the West Long Branch and Shore Regional school districts for the 2017-18 school year.  In those agreements, the tuition for the Loch Arbour students who attended schools in the West Long Branch school district was set at $14,000 per pupil for the school year, and at $15,500 per pupil who attended schools in the Shore Regional school district for the same year.

In addition, Loch Arbour had two children who required special needs placements.  OTSD had sent those children to special education placements outside of its district, at a cost of approximately $150,000 per year in the aggregate for both children.  Notwithstanding these added expenses, it was Loch Arbour's position it would still fare far better financially by withdrawing

[2]  N.J.S.A. 18A:38-19 states in relevant part:

> Whenever the pupils of any school district are attending public school in another district . . . , the board of education of the receiving district shall determine a tuition rate to be paid by the board of education of the sending district to an amount not in excess of the actual cost per pupil as determined under rules prescribed by the commissioner and approved by the State board. . . .

5

from the OTSD and entering into a send-receive relationship with the West Long Branch and Shore Regional school districts, given the savings it would realize overall. The ECS determined that if Loch Arbour withdrew from the OTSD, Ocean Township would be able to recover the revenue it would lose from Loch Arbour, as long as Ocean Township increased its local levy by 3.4 percent, which he calculated would necessitate raising the taxes on each residence by $182 per year.

Despite the aforementioned findings, the ECS found Loch Arbour had not provided sufficient information about the expenses associated with establishing and operating a new school district in Loch Arbour, such as the cost of office space, computer equipment, support staff, hiring an officer to track the Loch Arbour students' attendance in school, etc. He also observed Loch Arbour did not supply the projected cost to "phase out" Loch Arbour students from the OTSD to the new school districts, or provide an analysis of the social/emotional impact to Loch Arbour students if they were to leave one and enter another school district. Because the latter three issues were not addressed, the ECS declined to recommend that Loch Arbour be permitted to withdraw from the OTSD.

In response to the ECS's decision, Loch Arbour filed a verified petition with the Commissioner of Education, seeking permission to submit to the

6

voters of Loch Arbour the question of whether it should become a separate, independent school district. See N.J.S.A. 18A:8-9. In its petition, Loch Arbour also advised it wished to withdraw from the OTSD and enter into send-receive agreements with the West Long Branch and Shore Regional school districts.

In addition to submitting the materials it provided to the ECS, in its petition Loch Arbour addressed the issues the ECS found Loch Arbour had failed to cover in the application it had submitted to him. Loch Arbour verified that, to ease the transition for students transferring from the OTSD to the new districts, it would not object to any child continuing to attend an OTSD school until such child completed the level of school – elementary, intermediate or high school – he or she was currently attending. Loch Arbour pointed out it would pay for such child on a "tuition paying basis," noting the tuition for a school in the OTSD for the 2015-16 school year would be $17,132 per pupil.

Loch Arbour also submitted an analysis of its costs to operate a school district. It estimated that even if all children stayed in the OTSD as part of the transition process and Loch Arbour expended what it required to establish a new school district, it would spend approximately $600,000 during the first year of the district's existence. It anticipated start-up costs for its school

7

district would drop forty percent after the first year, making its plan to withdraw from the OTSD still more practical than not. In addition, Loch Arbour noted that because OTSD would not need to pay the tuition and other costs associated with educating Loch Arbour's special needs students, OTSD would only need to raise taxes on each residence by $166 – not $182 – per year in order to recover those costs previously paid for by Loch Arbour.

The OTSD and Ocean Township answered Loch Arbour's petition, challenging Loch Arbour's claims. For simplicity, because these two parties' positions are identical, we shall refer to these two parties as the OTSD or appellants, unless otherwise indicated.

The Acting Commissioner of Education (Commissioner) ultimately determined Loch Arbour could withdraw from the OTSD pursuant to N.J.S.A. 18A:8-4, as long as Loch Arbour's residents approved following a referendum. In her written decision, the Commissioner noted N.J.S.A. 18A:8-11(b) permits a municipality to oppose a petition to withdraw from a school district on only four grounds. Those grounds are:

> 1. [a]n excessive debt burden will be imposed upon the remaining district,
>
> 2. [a]n efficient school system cannot be maintained in the remaining district without excessive costs,

8

3.    [i]nsufficient pupils will be left in the remaining district to maintain a properly graded school system, or

4.    . . . any other reason, which it may deem to be sufficient[.]

[Ibid.]

The OTSD's arguments predominantly fell into the fourth category. One of those arguments was that villages are not entitled to avail themselves of the remedy in N.J.S.A. 18A:8-4. This statute provides that when a municipality is divided into two, the school district that had existed for the one, undivided municipality shall serve as the district for both municipalities, unless the district is divided as provided by N.J.S.A. 18A:8-4 to 18A:8-24. The OTSD contended N.J.S.A. 18A:8-4 does not permit a village to be separated from any other form of municipality and, thus, a district that had served a municipality and a village cannot be divided and must continue to serve both the municipality and village as one district. The Commissioner rejected such argument as contrary to the plain language of N.J.S.A. 18A:8-4.

The OTSD also argued the district it shared with Loch Arbour was a "consolidated" one and, thus, could not be severed because there was no law authorizing "deconsolidation." The Commissioner reasoned that, because the OTSD and Loch Arbour never had separate school districts that, after

9

formation, subsequently joined together as one, the OTSD could not be a consolidated district. Therefore, she found, Loch Arbour could avail itself of the remedy provided in N.J.S.A. 18A:8-4 to 18A:8-24 and seek to withdraw from the OTSD.

The OTSD further contended permitting Loch Arbour to withdraw from its district would undermine the purpose of the School Funding Reform Act, N.J.S.A. 18A:7F-43 to -63, legislation that had revised the State's school funding formula to ensure all school districts contributed an equitable share to the statewide school tax levy. The OTSD argued the send-receive relationship Loch Arbour entered into with the West Long Branch and Shore Regional school districts would result in Loch Arbour's tax levy to be based upon per pupil cost of the receiving districts and not upon Loch Arbour's equalized assessed property values. The Commissioner spurned OTSD's argument, noting the tax levy imposed by the State upon Loch Arbour – as well as all other school districts, even if non-operating – still would be calculated on a district's equalized assessed property values.

The OTSD further maintained Loch Arbour was not permitted to create a non-operating school district, but the Commissioner found that it was, citing in support Edmondson v. Bd. of Educ. of Borough of Elmer, 424 N.J. Super. 256, 265 (App. Div. 2012) (holding that a municipality is not prohibited from

10

forming a non-operating school district so that it may enter into a sending-receiving relationship with another district). Crediting the ECS's findings, the Commissioner also rejected the OTSD's claim Ocean Township would be saddled with an excessive debt burden, <u>see</u> N.J.S.A. 18A:8-11(b)(1), if Loch Arbour withdrew from its district. Finally, the Commission noted Loch Arbour would not assume any indebtedness if it withdrew from Ocean Township's district, because no educational facilities would exist within Loch Arbour.

The ESC scheduled a referendum and, on April 4, 2017, Loch Arbour residents voted 93-4 to withdraw from Ocean Township's school district and establish an independent one. Thereafter, the Loch Arbour Board of Education was organized and entered into send-receive agreements with West Long Branch and Shore Regional school districts for the 2017-18 school year.

II

Appellants assert the following arguments for our consideration.

> <u>POINT ONE:</u>     LOCH ARBOUR'S PETITION TO THE COMMISSIONER WAS FATALLY PROCEDURALLY DEFECTIVE FROM THE OUTSET, AND THEREFORE THE COMMISSIONER WAS WITHOUT JURISDICITON TO RULE ON THE SAME.
>
> <u>POINT TWO:</u>     AS A VILLAGE, LOCH ARBOUR HAD NO LEGAL ABILITY TO UTILIZE THE

11

A-1985-16T1

STATUTORY PROCESS SET FORTH AT N.J.S.A 18A:8-4, REQUIRING THIS COURT TO REVERSE THE DECISION OF THE ACTING COMMISSIONER.

POINT THREE: THE ACTING COMMISSIONER FAILED TO CONSIDER RELEVANT EVIDENCE CONCERNING THE IMPACT OF SEPARATION ON THE OTSD, AS WELL AS LOCH ARBOUR PUPILS, INCLUDING THE LACK OF APPRECIABLE DIVERSITY IN THEIR NEW SETTING, AND THE LACK OF EDUCATIONAL BASIS FOR THE CHANGE.

POINT FOUR: THE ACTING COMMISSIONER'S FINDING THAT THE OTSD IS NOT A CONSOLIDATED SCHOOL DISTRICT IS CONTRARY TO THE EVIDENCE AND IS ARBITRARY, CAPRICIOUS AND UNREASONABLE.

POINT FIVE: THE ACTING COMMISSIONER ERRED IN FINDING THAT LOCH ARBOUR'S SEPARATION FROM THE OTSD, FORMULATION OF A NON-OPERATING SCHOOL DISTRICT, AND ENTRY INTO SENDING/RECEIVING AGREEMENT AT A LOWER PER PUPIL COST, DID NOT VIOLATE THE NON-OPERATING SCHOOL DISTRICT ACT OR THE SCHOOL FUNDING REFORM ACT.

We reject these contentions and affirm.

This court's review of agency determinations is limited. In re Stallworth, 208 N.J. 182, 194 (2011). This court "defer[s] to the specialized or technical expertise of the agency charged with administration of a regulatory

12

system." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). For that reason, this court will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid. "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). These principles apply to appellate review of administrative decisions involving "disputes arising under school laws." Kaprow v. Bd. of Educ., 131 N.J. 572, 591 (1993) (citations omitted). However, this court is not bound by the agency's legal conclusions, G.S. v. Dep't of Human Servs., 157 N.J. 161, 170 (1999), but does defer to the "agency's interpretation of statutes and regulations within its implementing and enforcing responsibility." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)).

We first address appellants' argument that, as a village, Loch Arbour cannot avail itself of the remedy provided in N.J.S.A. 18A:8-4, which permits

13

a municipality to seek to withdraw from a school district pursuant to N.J.S.A. 18A:8-5 to -21 because, as a village, Loch Arbour is not a municipality.

In pertinent part N.J.S.A.18A:8-1 provides:

> Each municipality shall be a separate local school district . . . except that each incorporated village shall remain a part of the district in which it is situated at the time of its incorporation.

There is no question that, because it is a village, consistent with this statute Loch Arbour continued to be a part Ocean Township's school district after Loch Arbour was incorporated in 1957.

N.J.S.A. 18A:8-4 states:

> Whenever a municipality is divided into two or more municipalities, the school district shall continue as a single school district unless and until the same shall be divided as provided in this article.

N.J.S.A. 18A:8-4 thus provides that if a municipality divides and creates an additional municipality or municipalities, the new municipality or municipalities become a part of the original municipality's school district. However, a school district may be divided if it separates or divides as provided in N.J.S.A. 18A:8-5 to 18A:8-24. Loch Arbour sought to do exactly that in its petition – divide Ocean Township's school district and create a new, separate school district for Loch Arbour.

14

As stated, appellants contend N.J.S.A. 18A:8-4 does not apply to Loch Arbour because it is a village and they claim villages are not municipalities. Therefore, they contend, because N.J.S.A. 18A:8-4 refers to only municipalities, this statute does not permit a village to divide a school district of which it is a part and create a new one. We reject this premise, because it is plain N.J.S.A.18A:8-4 applies to all municipalities, which include villages.

It is well established that when interpreting a statute, "we look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008). "[T]he best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). "A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002) (citing State v. Afanador, 134 N.J. 162, 171 (1993)).

Of course, if the meaning of a term is not clear, we may resort to extrinsic evidence, "including legislative history, committee reports, and contemporaneous construction." DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)). In addition,

15

"[i]n determining the common meaning of words, it is appropriate to look to dictionary definitions." Macysyn v. Hensler, 329 N.J. Super. 476, 485 (App. Div. 2000) (citing Matthews v. State, 187 N.J. Super. 1, 7-8 (App. Div. 1982), appeal dismissed, 93 N.J. 298 (1983)). If applicable, we may also resort to N.J.S.A. 1:1-2, which states:

> Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them. . . .

Significantly, the statute specifically defines the term "municipality" to

> include cities, towns, townships, villages and boroughs, and any municipality governed by a board of commissioners or an improvement commission.
>
> [N.J.S.A. 1:1-2 (emphasis added).]

Because a village is a municipality and there is no indication the Legislature intended to exclude villages from seeking to divide a school district pursuant to N.J.S.A. 18A:8-5 to -21, we affirm the Commissioner's determination N.J.S.A. 18A:8-4 does not bar Loch Arbour from withdrawing from the OTSD. We note further that, in In re Incorporation of Loch Arbour, 25 N.J. 258 (1957), our Supreme Court observed over sixty years ago that a village is a municipality, stating "[t]he village as a separate municipal unit, both

16

unincorporated and corporate, has had a long period of acceptance in the law." Id. at 266.

We next turn to appellants' contention the OTSD is consolidated and, because there is no provision in the law permitting a consolidated school district to become "deconsolidated," Loch Arbour cannot separate from Ocean Township's district. We need not examine the merits of this premise because appellants have failed to show the Ocean Township school district was ever consolidated with any district formed by Loch Arbour.

N.J.S.A. 18A:8-25 to -41 govern consolidated school districts. Despite the ample use of the term "consolidated" in these statutes, such word is not defined in these or any other statute. Accordingly, we resort to the dictionary to ascertain the meaning of this term. See Macysyn, 329 N.J. Super. at 485. Black's Law Dictionary defines this term as, "[i]n a general sense, to unite or unify into one mass or body, as to consolidate several small school districts into a large district . . . ." Black's Law Dictionary With Pronunciations 279 (5th ed. 1979). Merriam-Webster defines "consolidate" as "to join together into one whole: UNITE[,] consolidate several small school districts[.]" Merriam-Webster, *Consolidate*, MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/consolidate (Last Updated August 28, 2018).

17

Applying these dictionary definitions, we are convinced that, as used by the Legislature in N.J.S.A. 18A:8-25 to -41, the term "consolidated" means or refers to separate school districts that have been joined together to form one district. Here, neither Loch Arbour nor Ocean Township ever had separate school districts that combined or joined to form one, consolidated district. In fact, by operation of law, when Loch Arbour was incorporated as a village back in 1957, it was required to remain a part of Ocean Township's school district.

Second, we note the authority upon which appellants rely for the premise that Ocean Township's district is consolidated is not binding upon this court. Appellants rely upon an unpublished Chancery Division opinion, an unpublished Appellate Division opinion in which we specifically declined to rule on this particular issue, and correspondence authored by two previous Commissioners of Education who clearly did not make a specific ruling that Ocean Township's school district is a consolidated one. Accordingly, because there is no evidence the school district from which Loch Arbour seeks to withdraw is consolidated, we need not address whether it can sever itself from such a district.

A-1985-16T1

Appellants maintain Loch Arbour cannot form a non-operating school district. In support, they cite N.J.S.A. 18A:8-44(a), enacted in 2009, which states:

> Except as otherwise provided in subsection b. of this section, the executive county superintendent of schools shall eliminate any non-operating district and merge that district with the district with which it participates in a sending-receiving relationship.

Appellants contend this provision evinces the Legislature's intent to eliminate not only non-operating school districts from the State, but also to preclude the formation of new non-operating districts. We disagree. As we noted in Edmondson v. Bd. of Educ. of Borough of Elmer, 424 N.J. Super. 256, 265 (App. Div. 2012):

> As recently as June 2009, the Legislature devised a plan that responds to, but does not prohibit, arrangements where, as here, one of the districts in a sending-receiving relationship no longer operates any school. N.J.S.A. 18A:8-43 to -49; N.J.S.A. 18A:7-8 (L. 2009, c. 78 §§ 1-11). In general terms, these statutes direct the executive county superintendent to
>
> eliminate these "non-operating districts," in accordance with a plan and schedule approved by the Commissioner, providing for merger with the district "best able to accommodate the merger." N.J.S.A. 18A:8-43, -44; N.J.S.A. 18A:7-8(g).
>
> In recognizing the existence of sending-receiving relationships that leave a non-operating district and directing merger of non-operating districts, the

19

Legislature did not amend Chapter 38 of Title 18A to prohibit arrangements that result in [the] creation of a non-operating district. Rather, the Legislature addressed the consequences in a way that provides another avenue for reaching the goal of consolidation through mergers that are consistent with the thorough and efficient education of children. N.J. Const. art. VIII, § 4, ¶ 1.

[Id. at 265].

Therefore, although an ECS may well be required to eliminate any non-operating school district in a county and merge it with the district with which it is participating in a send-receive relationship, a municipality is not barred from forming a non-operating school district so that it may enter into such a relationship with another district. Here, that is exactly what Loch Arbour endeavored to achieve by filing its petition.

We considered appellants' remaining arguments, and determined they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Satisfied the Commissioner's decision was supported by substantial evidence and was not arbitrary, capricious or unreasonable, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-1985-16T1