SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Moshe Rozenblit v. Marcia V. Lyles (A-41/42-19) (083434)**

**Argued October 13, 2020 -- Decided February 3, 2021**

**PATTERSON, J., writing for the Court.**

In this appeal, the Court considers statutory and constitutional challenges to provisions in a collective negotiations agreement (CNA) between the Jersey City School District (District) and the Jersey City Education Association (Association) that authorized two teachers, or "releasees," employed and compensated by the District to work full-time on the Association's business, a practice known as "release time."

The CNA states that "[t]he president of the [Association], and his/her designee, shall be permitted to devote all of his/her time to the Association business and affairs." The two employees designated as releasees receive full-time salaries and benefits from the District. The releasees' duties include facilitating labor-management relations, resolving disagreements, promoting effective communications between teachers and administration, promoting harmonious employer/employee relationships, and helping set and clarify school policies with the administration. The releasees keep an appropriate Associate Superintendent apprised of the work they are doing and their location.

Plaintiffs, as taxpayers, filed this action contending that the CNA's release time provisions violate the New Jersey Constitution's Gift Clause. The trial court granted summary judgment in favor of the District, holding that the release time provisions represented the District's implementation of its right under N.J.S.A. 18A:30-7 to grant teachers leave other than sick leave. The trial court also found that plaintiffs did not demonstrate beyond a reasonable doubt that the release time provisions violate the Gift Clause.

The Appellate Division reversed. 461 N.J. Super. 20, 31-32 (App. Div. 2019). Declining to address the constitutional issue on which plaintiffs based their claim, id. at 24-25, the Appellate Division concluded that the Jersey City Board of Education (Board) acted beyond the scope of its statutory authority when it paid the salaries and benefits of the two releasees, id. at 31-32.

The Court granted the petition and cross-petition for certification. 240 N.J. 551 (2020); 240 N.J. 552 (2020).

1

**HELD:** The Board's payment of salaries and benefits to the releasees did not exceed its statutory grant of authority. The Board's agreement to the CNA's release time provisions is authorized by the plain language of N.J.S.A. 18A:30-7, construed in conjunction with two related provisions of the Education Code, N.J.S.A. 18A:27-4 and N.J.S.A. 18A:11-1(c), and with a core provision of the Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-2. Further, the release time serves a public purpose and is so consonant with the accomplishment of that purpose that it does not offend the State Constitution.

1. The Court first considers the statutory question raised by the Appellate Division -- whether the Legislature granted the Board the authority to pay the salaries and benefits of the two releasees. Local boards of education may exercise only those powers granted to them by the Legislature. Title 18A of the New Jersey Statutes, the Education Code, includes several provisions addressing the scope of the legislative grant of authority to boards of education. The Court reviews N.J.S.A. 18A:11-1(c), N.J.S.A. 18A:27-4, and the provision at the center of this appeal -- N.J.S.A. 18A:30-7. Entitled "Power of boards of education to pay salaries," N.J.S.A. 18A:30-7 provides: "Nothing in this chapter shall affect the right of the board of education to fix either by rule or by individual consideration, the payment of salary in cases of absence not constituting sick leave, or to grant sick leave over and above the minimum sick leave as defined in this chapter . . . ." The Legislature did not define "absence not constituting sick leave," or limit leaves of absence other than sick leave that a board of education may authorize school employees to take. The EERA also informs the determination of this appeal. In the EERA, the Legislature declared, in part, that "the best interests of the people of the State are served by the prevention or prompt settlement of labor disputes." N.J.S.A. 34:13A-2. The Court considers the Education Code and the EERA in tandem. (pp. 17-22)

2. By its plain language, N.J.S.A. 18A:30-7 confers on boards the authority to grant leaves of absence -- in addition to and distinct from sick leave -- to school employees. The Legislature could have limited the boards' power in this regard by enumerating specific categories of leaves of absence in the statute, but it declined to do so. The legislative goal is clear: to afford to boards expansive authority to make rules with respect to such leaves of absence. A releasee is "absent" from ordinarily assigned duties within the meaning of the statute. And the mandatory leave prescribed in N.J.S.A. 18A:30-8 for elite athletes competing internationally does not constitute "absence not constituting sick leave" under N.J.S.A. 18A:30-7, which school boards are permitted at their discretion -- but not required -- to grant. Nothing in N.J.S.A. 18A:30-8 suggests legislative intent to limit boards' discretion to grant leaves of absence in other settings under N.J.S.A. 18A:30-7. (pp. 23-25)

3. Interpreting N.J.S.A. 18A:30-7 to encompass release time furthers the Legislature's intent that boards of education make rules "for the government and management of the public schools . . . and for the employment, regulation of conduct and discharge of [their] employees." N.J.S.A. 18A:11-1(c). It also comports with the Legislature's grant of

2

power to boards to make rules "governing the employment, terms and tenure of employment, . . . and salaries and time and mode of payment thereof of teaching staff members." N.J.S.A. 18A:27-4. Finally, it promotes the EERA's primary objective: "the prevention or prompt settlement of labor disputes," in order to forestall "strikes, lockouts, work stoppages and other forms of employer and employee strife" that waste public resources and hamper public education. N.J.S.A. 34:13A-2. And that interpretation is consonant with the Court's jurisprudence and with scope-of-negotiations determinations by the Public Employment Relations Committee over many years. (pp. 25-27)

4. The Court next considers plaintiffs' constitutional challenge to the payment of the releasees' salaries and benefits pursuant to the CNA. The Gift Clause provisions relevant here -- N.J. Const. art. VIII, § 3, ¶¶ 2, 3 -- reflect the fundamental doctrine that public money should be raised and used only for public purposes. Under the standard prescribed in Roe v. Kervick, 42 N.J. 191, 218-19 (1964), and later case law, a court addressing a Gift Clause challenge must first determine whether the transaction is for a public purpose, and second, whether the means to accomplish that public purpose are consonant with it. For purposes of the first inquiry, courts consider whether the disputed activity serves as a benefit to the community as a whole and is directly related to the functions of government. The second inquiry requires the resolution of two subsidiary questions: (1) whether the transaction is contractual and involves some obligation on the part of the private entity that is intimately tied to fulfilling the public purpose, and (2) whether the accomplishment of the public purpose is the paramount factor in the contract with any private advantage being merely incidental or subordinate. (pp. 28-32)

5. Here, the release time serves public purposes expressly recognized by the Legislature in N.J.S.A. 34:13A-2. And the releasees work to enhance the collective bargaining process, recognized to "promote labor stability in the public sector and enhance the delivery and avoid the disruption of public services." N.J.S.A. 34:13A-5.12. As to the second prong, the release time is part of an agreement arrived at through collective negotiations in which the Association made concessions. The releasees' duties directly relate to the resolution of employer-employee disputes, and the District maintains sufficient oversight to ensure that the public purpose is served. Finally, the public purpose of the release time provisions is the paramount factor in the agreement. The releasees' primary assignment is to engage with District personnel and Association members to resolve labor disputes at an early stage. The releasees are routinely asked by District or school officials to intervene, and they report to the District on the results achieved. The release time provisions conform to the two-part standard and do not constitute gifts to the Association in violation of the State Constitution. (pp. 33-36)

**REVERSED. The judgment of the trial court is REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-41/42 September Term 2019
083434

Moshe Rozenblit, and Won Kyu Rim,

Plaintiffs-Respondents/Cross-Appellants,

v.

Marcia V. Lyles, in her official capacity as
Superintendent of the Jersey City Board of Education,
Vidya Gangadin, in her official capacity as President
of the Jersey City Board of Education, and Jersey City
Public Schools of the City of Jersey City,

Defendants,

and

Jersey City Board of Education,

Defendant,

and

Jersey City Education Association, Inc.,

Defendant-Appellant/Cross-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
461 N.J. Super. 20 (App. Div. 2019).

Argued                    Decided
October 13, 2020       February 3, 2021

1

Leon Dayan, of the California and District of Columbia bars, admitted pro hac vice, argued the cause for appellant/cross-respondent (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, National Education Association, and Bredhoff & Kaiser, attorneys;  Richard Friedman, Leon Dayan, Jason Walta, of the District of Columbia and Massachusetts bars, admitted pro hac vice, and John M. West, of the District of Columbia and Pennsylvania bars, admitted pro hac vice, on the briefs).

Jonathan Riches, of the Arizona bar, admitted pro hac vice, argued the cause for respondents/cross-appellants (Law Offices of G. Martin Meyers and Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, attorneys; Justin A. Meyers and Jonathan Riches, on the briefs).

Steven R. Cohen argued the cause for amicus curiae New Jersey Education Association (Selikoff & Cohen and New Jersey Education Association, attorneys; Steven R. Cohen, Keith Waldman, Hop T. Wechsler, Daniel R. Dowdy, and Aileen O'Driscoll, on the brief).

Flavio L. Komuves argued the cause for amici curiae Communications Workers of America, AFL-CIO, the American Federation of Teachers, AFL-CIO, the American Federation of State, County and Municipal Employees, AFL-CIO, the International Federation of Professional and Technical Employees, AFL-CIO and the Public Employee Committee of the New Jersey State AFL-CIO (Weissman & Mintz, attorneys; Flavio L. Komuves, Ira Mintz, and Steven P. Weissman, on the brief).

Christine Lucarelli argued the cause for amicus curiae New Jersey Public Employment Relations Commission (New Jersey Public Employment Relations Commission, attorneys; Christine Lucarelli, on the brief).

2

Mark Miller argued the cause for amici curiae Pacific Legal Foundation and Americans for Prosperity-New Jersey (Pacific Legal Foundation, attorneys; Steven Simpson, of counsel, and Mark Miller, on the brief).

Sanford R. Oxfeld submitted a brief on behalf of amici curiae East Orange Education Association and Wayne Education Association (Oxfeld Cohen, attorneys; Sanford R. Oxfeld and William P. Hannan, of counsel and on the brief).

Arnold Shep Cohen submitted a brief on behalf of amicus curiae IFPTE, Local 195, AFL-CIO (Oxfeld Cohen, attorneys; Arnold Shep Cohen, of counsel and on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we consider statutory and constitutional challenges to provisions in a collective negotiations agreement (CNA) between the Jersey City School District (District) and the Jersey City Education Association (Association). The disputed provisions authorized two teachers, or "releasees," employed and compensated by the District to work full-time on the Association's "business and affairs," a practice known as "release time."

Plaintiffs Moshe Rozenblit and Won Kyu Rim sought a declaratory judgment holding that the District's payment of the salaries and benefits of employees on release time is contrary to the Gift Clause provisions of Article VIII, Section 2, Paragraph 1; Article VIII, Section 3, Paragraph 2; and Article

3

VIII, Section 3, Paragraph 3 of the New Jersey Constitution. Plaintiffs and the Association cross-moved before the trial court for summary judgment. The court held that the disputed provisions did not violate the Gift Clause. It denied plaintiffs' motion for summary judgment and granted the Association's motion for summary judgment dismissing plaintiffs' claims.

The Appellate Division reversed the trial court's judgment and invalidated the CNA's release time provisions on statutory grounds. Rozenblit v. Lyles, 461 N.J. Super. 20, 25-32 (App. Div. 2019). It held that N.J.S.A. 18A:30-7, the statute on which the Jersey City Board of Education (Board), the District, and the Association relied as authority for their agreement to the release time provisions, did not authorize the Board to disburse public funds to the two releasees. Id. at 28. The Appellate Division did not reach the constitutional issue raised by plaintiffs. Id. at 24-25. We granted the parties' cross-petitions for certification.

We do not share the Appellate Division's view that the Board's agreement to the disputed provisions exceeded its statutory grant of authority. In the Education Code, the Legislature empowered boards of education to make rules governing the compensation of teachers, N.J.S.A. 18A:27-4, and to fix "the payment of salary in cases of absence not constituting sick leave," N.J.S.A. 18A:30-7. The Legislature thus authorized the Board to grant a paid

4

leave to the releasees to allow them to attend to labor relations work pursuant to the CNA.  Moreover, because the releasees' efforts encourage cooperative labor relations and facilitate the early resolution of employer-employee disputes, the CNA's release time provisions facilitate the Board's management of the public schools pursuant to N.J.S.A. 18A:11-1(c).  The releasees also further the mediation and resolution of labor disputes in accordance with N.J.S.A. 34:13A-2, a provision of the Employer-Employee Relations Act (EERA).  We conclude that the Board's payment of salaries and benefits to the releasees is within its statutory grant of authority.

We concur with the trial court that the Board did not violate the Gift Clause of the New Jersey Constitution when it agreed to the release time provisions in the CNA.  Applying the standard prescribed in Roe v. Kervick, 42 N.J. 191, 218-19 (1964), and later case law, we conclude that the release time provisions serve a public purpose and are so consonant with the accomplishment of that public purpose that they do not offend the Gift Clause.

Accordingly, we reverse the judgment of the Appellate Division and reinstate the trial court's order dismissing plaintiffs' claims.

5

# I.

## A.

We summarize the facts based on the record submitted to the trial court in connection with the cross-motions for summary judgment filed by plaintiffs and the Association.

On May 10, 2010, the District and the Association executed the CNA, which was effective from September 1, 2013 to August 31, 2017.[1]  Two provisions of the contract's Article 7, which addresses "Association Rights," are relevant to this appeal.  First, Section 7-2.3 stated that "[t]he president of the [Association], and his/her designee, shall be permitted to devote all of his/her time to the Association business and affairs.  The [p]resident shall continue to be granted adequate office and parking facilities."  Second, Section 7-2.4 stated that "[t]he president's designee shall carry out appropriate Association business, provided that the aforesaid business shall not disrupt the educational process.  The designee shall notify the Superintendent or his/her

---

[1]  In the CNA, the District recognized the Association as the exclusive and sole bargaining representative for "all certificated personnel, attendance counselors and teaching assistants employed in the [D]istrict."  The Association states that it not only represents the 3,000 employees covered by that CNA, but that it is also involved in the administration of three other CNAs governing approximately 800 District employees who are members of other unions.

designee as to where and when he/she is carrying out such Association business during school time."

During the period relevant to this appeal, the two employees designated as releasees pursuant to Sections 7-2.3 and 7-2.4 were the Association's president, Ronald Greco, and its second vice president and Grievance Chair, Tina Thorp. It is undisputed that Greco and Thorp received full-time salaries and benefits during the contract term.

According to a certification submitted by Greco to the trial court, since 1969 or before, the collective negotiations agreements between the District and the Association have provided that the Association's president would be a full-time employee on release time. Greco certified that in 1998, school administrators requested that a second releasee be designated to work full-time on the resolution of labor disputes and other Association duties, and the Association agreed to that request.

Greco described his release time duties to include "facilitating labor-management relations, informally and formally resolving disagreements, promoting effective communications between teachers and administration, improving education quality and personnel skill, promoting harmonious employer/employee relationships, helping set and clarify school polic[i]es with the administration, and working with the staff to understand and comply with

7

all policies." He contended that he and Thorp "keep labor peace in the [school] buildings by facilitating the resolution of disputes that may arise between employees and management." Greco certified that he was regularly asked by District administrative staff to report to them on the results of his efforts to conciliate labor disputes. He stated that he and Thorp also "resolve policy issues" between the District and its employees by "explaining to the staff the purpose of policies and to understand why administration might be contemplating or taking certain action," and by stating the position of the employees on contested issues to school administration.

Greco estimated that he and Thorp spend approximately seventy percent of their working hours attempting to resolve grievances and other disputes between teachers and school administration, and both releasees certified that they spend ninety percent of their school day personally interacting with District personnel in school buildings or Board headquarters. Greco represented that he is "regularly asked by central administrative staff to travel to a school to conciliate a dispute, and then report back on the results of those efforts."

Greco and Thorp certified that they are required to work a specified number of days per year. Greco stated that he "keep[s] an appropriate Associate Superintendent apprised" of the work he is doing and his location,

8

that he reports to District administrators regarding any absence from duty, and that he "could be subjected to discipline by the school district" for conduct related to his employment.

In deposition testimony, Celeste Williams, the District's Chief of Talent responsible for human resources issues, testified that to the best of her knowledge, the District did not direct the daily activities of Greco or Thorp, formally evaluate them, or assign them a supervisor.

B.

1.

Plaintiffs, who asserted standing based on their status as taxpayers, filed this action against the Jersey City Public Schools, the Superintendent of the Jersey City Public Schools, the Board, the Board's President, and the Association. They contend that the CNA's release time provisions violate the New Jersey Constitution's Gift Clause because the District exercises insufficient control over the two releasees. Plaintiffs allege that the work performed by the releasees served only the private purposes of the Association, not the public welfare or the community as a whole.

The Association filed a motion to dismiss the complaint for failure to state a claim pursuant to <u>Rule</u> 4:6-2(e). The trial court denied that motion, reasoning that plaintiffs had stated a claim for a violation of the Gift Clause

9

sufficient to avoid dismissal. It ruled that a determination of the merits of that claim would require a full record developed in expedited discovery and dispositive motions.

The parties conducted discovery and then cross-moved for summary judgment in accordance with Rule 4:46-2. Applying this Court's decision in Roe, the trial court held that the release time provisions of the CNA represented the District's implementation of its right under N.J.S.A. 18A:30-7 to grant teachers leave other than sick leave. The court acknowledged that plaintiffs did not directly challenge N.J.S.A. 18A:30-7. It nonetheless applied the heightened standard imposed when a party challenges a statute on constitutional grounds under this Court's decision in Gangemi v. Berry, 25 N.J. 1, 10 (1957), and required plaintiffs to demonstrate that the release time provisions were unconstitutional beyond a reasonable doubt.

The trial court found that the Board's grant of the challenged release time serves public purposes important to the District's educational mission: the facilitation of effective collective bargaining, disciplinary hearings, and grievance procedures; avoiding the expense of prolonged arbitration; and ensuring effective labor-management communications. The court also held that the District exercises sufficient control to ensure that the releasees would serve those public purposes. It concluded that plaintiffs did not demonstrate

10

beyond a reasonable doubt that the release time provisions in the CNA violated the Gift Clause.

The trial court denied plaintiffs' motion for summary judgment and granted the Association's motion for summary judgment dismissing plaintiffs' claims.

2.

Plaintiffs appealed the trial court's judgment. The Appellate Division granted the application of the Pacific Legal Foundation to participate as amicus curiae.

The Appellate Division reversed the judgment of the trial court. Rozenblit, 461 N.J. Super. at 31-32. Invoking the doctrine of constitutional avoidance, the court premised its determination on statutory grounds. Id. at 24-30. It concluded that the Association had cited to no statute authorizing "the Board to pay the salaries of teachers whose job duties are exclusively devoted to the service of another organization." Id. at 30.

The Appellate Division construed N.J.S.A. 18A:30-7, which authorizes the Board to determine payment of salary "in cases of absence not constituting sick leave," to apply only to employees who were physically absent from school property; the court therefore found that statute to be irrelevant to the two employees at issue here. Id. at 27-28. Citing several categories of

11

"absence not constituting sick leave" addressed in the CNA -- "death related" absences, absences due to a quarantine ordered by official action, absences due to a court order, and leaves of absence for study or for rest and recuperation -- the court distinguished release time on the basis that it conferred no "reciprocal benefit" on the District. Id. at 29-30.

The Appellate Division further noted that N.J.S.A. 18A:30-8 mandates that a school district employee who qualifies to represent the United States in "athletic competition on the world, Pan American or Olympic level" is entitled to a leave of absence. Id. at 26. It found the "conspicuous omission" of a similar provision addressing release time to signal legislative intent not to authorize school districts to pay full-time salaries and benefits to releasees. Id. at 31.

The Appellate Division accordingly held Section 7-2.3 of the CNA to be against public policy and unenforceable, and found the Board's disbursement of public funds pursuant to that provision to be ultra vires. Id. at 31-32. It declined to reach plaintiffs' constitutional challenge to the release time provisions. Id. at 24-25.

3.

We granted the Association's petition for certification, 240 N.J. 551 (2020), and plaintiffs' cross-petition for certification, 240 N.J. 552 (2020). We also granted several individual and joint applications for amicus curiae status.

II.

A.

The Association contends that the Appellate Division improperly determined that there is no statutory authority for the time-honored and widespread practice of negotiating release time in collective bargaining between school boards and their employees.

In the Association's view, N.J.S.A. 18A:30-7's plain language authorizes the Board to grant leaves of absence to the releasees. The Association urges that we read N.J.S.A. 18A:30-7 in conjunction with the EERA's expansive provisions promoting negotiation of the terms and conditions of employment, provisions of the Education Code establishing school boards' authority to make rules regarding such terms and conditions, and the Legislature's mandate that boards govern and manage the public schools. Further, the Association asks the Court to address the constitutional challenge that the Appellate Division did not reach, and to hold that the Gift Clause does not bar provisions on release time in contracts such as the CNA.

13

B.

The following amici curiae concur with the Association's arguments: the New Jersey Education Association; the International Federation of Professional and Technical Employees, AFL-CIO, Local 195; the East Orange Education Association, participating jointly with the Wayne Education Association; and the Communications Workers of America, AFL-CIO, participating jointly with the American Federation of Teachers, AFL-CIO, the American Federation of State, County and Municipal Employees, AFL-CIO, the International Federation of Professional and Technical Employees, AFL-CIO, and the Public Employee Committee of the New Jersey State AFL-CIO.

Amici contend that the Appellate Division misconstrued N.J.S.A. 18A:30-7, which they argue authorizes the Board to set rules for release time status. Amici also agree with the Association that plaintiffs failed to demonstrate that the release time provisions violate the Gift Clause, given the substantial public benefit of those provisions and the provisions' nexus to that public benefit.

C.

Plaintiffs urge the Court to affirm the Appellate Division's judgment. They concur with the Association that the Court should decide the

constitutional issue that they raised in this case, and urge that we find the practice of release time to contravene the Gift Clause.

Plaintiffs also assert a statutory argument not raised before the trial court:  they contend that N.J.S.A. 18A:30-7 does not apply to release time because the term "absence" in that provision denotes a period during which an employee is not working.  Plaintiffs assert that the EERA neither directly governs education nor permits school districts to spend public funds in a manner not permitted by statute.  They argue that release time is not a subject of mandatory bargaining because it is not a term or condition of employment and it is unrelated to the employee's service as a teacher.

## D.

Jointly participating amici curiae the Pacific Legal Foundation and Americans for Prosperity - New Jersey concur with plaintiffs that release time is unauthorized by any New Jersey statute.  Amici view release time in the setting of this appeal to constitute an unconstitutional gift of public funds for which the District received no consideration and over which it exercised no control.

## E.

The New Jersey Public Employment Relations Committee (PERC) asserts as amicus curiae that the Appellate Division improperly made a scope-

of-negotiations determination despite PERC's status as the agency authorized by statute to make such a determination. It asks the Court to reverse that judgment and remand the matter to PERC for a scope-of-negotiations determination under In re Local 195, IFPTE, 88 N.J. 393 (1982). Citing several of its decisions, PERC asserts that N.J.S.A. 18A:30-7 does not preempt the negotiation of release time under the second prong of the Local 195 test, and that release time is therefore mandatorily negotiable.

## III.

## A.

We review the trial court's determination of the parties' cross-motions for summary judgment in accordance with the standard that governed the court's analysis. See R. 4:46-2; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)).

16

B.

1.

We first consider the statutory question raised by the Appellate Division's determination.  See Rozenblit, 461 N.J. Super. at 24-30.  Our review of issues involving statutory construction is de novo.  Christian Mission John 3:16 v. Passaic City, 243 N.J. 175, 184 (2020).

In that inquiry, "our goal is to 'ascertain and effectuate the Legislature's intent.'"  Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 583 (2018) (quoting Cashin v. Bello, 223 N.J. 328, 335 (2015)).  To that end, we first look to the statute's language and ascribe to the Legislature's chosen words their ordinary meaning.  Mason v. City of Hoboken, 196 N.J. 51, 68 (2008) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  If "the statutory language is ambiguous, we may consider extrinsic materials such as legislative history, committee reports, and other relevant sources."  Kean Fed'n of Tchrs., 233 N.J. at 583 (citing Cashin, 223 N.J. at 335-36).

We "take into consideration the entire scheme of which a provision is a part."  Headen v. Jersey City Bd. of Educ., 212 N.J. 437, 450-51 (2012) (internal quotation marks omitted).  In reading "[a]n enactment that is part of a larger statutory framework," we are mindful of that context "so that a sensible meaning may be given to the whole of the legislative scheme."  Wilson ex rel.

17

Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). Accordingly, "[w]e may also turn to extrinsic guides if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." Ibid.

2.

Declining to address the constitutional issue on which plaintiffs based their claim, the Appellate Division concluded that the Board acted beyond the scope of its statutory authority when it paid the salaries and benefits of the two releasees. Rozenblit, 461 N.J. Super. at 31-32.[2] Accordingly, we consider whether the Legislature granted the Board the authority to agree to the disputed contractual provisions, and to pay the salaries and benefits of the two releasees.

As this Court has held, "[l]ocal boards of education are creations of the State and, as such, may exercise only those powers granted to them by the

---

[2] In this appeal, we do not conduct a scope-of-negotiations inquiry pursuant to State v. IFPTE, Local 195, 169 N.J. 505, 525-26 (2001). No party sought a scope-of-negotiations determination before PERC, which has primary jurisdiction pursuant to N.J.S.A. 34:13A-5.4 "to determine in the first instance whether a matter in dispute is within the scope of collective negotiations." In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 16 (2020) (quoting In re New Brunswick Mun. Emps. Ass'n, 453 N.J. Super. 408, 413 (App. Div. 2018)). The Appellate Division did not hold that release time is non-negotiable under Local 195, but addressed a different question: whether any statute authorized the Board to pay the releasees' salaries and benefits in accordance with the CNA. See Rozenblit, 461 N.J. Super. at 31-32.

18

Legislature -- either expressly or by necessary or fair implication." Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ., 79 N.J. 574, 579 (1979); accord Atl. City Educ. Ass'n v. Bd. of Educ. of Atl. City, 299 N.J. Super. 649, 654-55 (App. Div. 1997).

Title 18A of the New Jersey Statutes, the Education Code, includes several provisions addressing the scope of the legislative grant of authority to boards of education. In N.J.S.A. 18A:11-1(c), the Legislature authorized a board of education to

> [m]ake, amend and repeal rules, not inconsistent with this title or with the rules of the state board, for its own government and the transaction of its business and for the government and management of the public schools and public school property of the district and for the employment, regulation of conduct and discharge of its employees, subject, where applicable, to the provisions of Title 11, Civil Service, of the Revised Statutes.

The Legislature further addressed board of education oversight of teaching staff members' employment in N.J.S.A. 18A:27-4. That provision authorizes a board of education to

> make rules, not inconsistent with the provisions of this title, governing the employment, terms and tenure of employment, promotion and dismissal, and salaries and time and mode of payment thereof of teaching staff members for the district, and may from time to time change, amend or repeal the same, and the employment of any person in any such capacity and his rights and duties with respect to such employment shall be

19

dependent upon and governed by the rules in force with reference thereto.

[N.J.S.A. 18A:27-4.]

In Chapter 30 of the Education Code, the Legislature addressed the topic of leaves of absence for public school employees. Several provisions in Article 1 of that chapter mandate that boards of education provide sick leave for certain school employees, and provide for accumulated sick leave under certain circumstances. N.J.S.A. 18A:30-2 to -6.[3]

In Article 2 of Chapter 30, the Legislature considered additional sick leave "or other leaves of absence." Among the statutes set forth in Article 2 is N.J.S.A. 18A:30-7, the provision at the center of this appeal. Entitled "Power of boards of education to pay salaries," N.J.S.A. 18A:30-7 provides:

> Nothing in this chapter shall affect the right of the board of education to fix either by rule or by individual consideration, the payment of salary in cases of absence not constituting sick leave, or to grant sick leave over and above the minimum sick leave as defined in this chapter or allowing days to accumulate over and above those provided for in section 18A:30-2, except that no person shall be allowed to increase his total accumulation by more than 15 days in any one year.

---

[3] Sick leave is defined for purposes of Chapter 30 of Title 18A as a person's "absence from his or her post of duty," because of "personal disability due to illness or injury, or because he or she has been excluded from school by the school district's medical authorities on account of a contagious disease or of being quarantined for such a disease in his or her immediate household." N.J.S.A. 18A:30-1.

The Legislature did not define the term "absence not constituting sick leave," or limit leaves of absence other than sick leave that a board of education may authorize school employees to take. See ibid.

The Legislature specifically addressed one form of leave other than sick leave. It required boards of education to grant a limited "leave of absence with pay and without loss of rights, privileges and benefits" to "[a]ny school district employee who qualifies as a member of the United States team for athletic competition on the world, Pan American or Olympic level, in a sport contested in either Pan American or Olympic competitions." N.J.S.A. 18A:30-8. That mandatory leave for elite athletes competing internationally is distinct from the leaves of absence other than sick leave that a board of education may, in its discretion, grant pursuant to N.J.S.A. 18A:30-7.

The EERA also informs our consideration of this appeal. "The EERA affords public employees a vast array of rights, including the ability to appoint a majority representative to represent their interests and negotiate agreements on their behalf with an employer." In re County of Atlantic, 230 N.J. 237, 252 (2017) (citing N.J.S.A. 34:13A-5.3). In the EERA, the Legislature declared it to be the public policy of the State that

> the best interests of the people of the State are served by the prevention or prompt settlement of labor disputes, both in the private and public sectors; that

21

strikes, lockouts, work stoppages and other forms of employer and employee strife, regardless where the merits of the controversy lie, are forces productive ultimately of economic and public waste; that the interests and rights of the consumers and the people of the State, while not direct parties thereto, should always be considered, respected and protected; and that the voluntary mediation of such public and private employer-employee disputes under the guidance and supervision of a governmental agency will tend to promote permanent, public and private employer-employee peace and the health, welfare, comfort and safety of the people of the State. To carry out such policy, the necessity for the enactment of the provisions of this act is hereby declared as a matter of legislative determination.

[N.J.S.A. 34:13A-2.]

Pursuant to the EERA, "[p]roposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established." N.J.S.A. 34:13A-5.3. Moreover, "the majority representative and designated representatives of the public employer shall meet at reasonable times and negotiate in good faith with respect to grievances, disciplinary disputes, and other terms and conditions of employment." Ibid.

As a general rule, "the [EERA] and Title 18A, the education statute, are 'in pari materia and should be construed together "as the unitary and harmonious whole."'" Bd. of Educ. of Neptune v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 23 (1996) (quoting Red Bank Bd. of Educ. v. Warrington, 138

22

N.J. Super. 564, 569 (App. Div. 1976)); see also Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n, 64 N.J. 17, 24-25 (1973) (recognizing "our clear judicial responsibility to give continuing effect to the provisions in our Education Law (Title 18A) without, however, frustrating the goals or terms of the [EERA]"). Accordingly, we consider the Education Code and the EERA in tandem in our determination of this appeal.

3.

We do not concur with the Appellate Division's holding that when the Board agreed to the release time provisions of the CNA and paid the releasees' salaries and benefits, it acted outside of its statutory authority. See Rozenblit, 461 N.J. Super. at 31-32. The Appellate Division construed too narrowly the Legislature's grant of discretionary authority to school boards in N.J.S.A. 18A:30-7.

We view N.J.S.A. 18A:30-7's plain language to confer on boards of education the authority to grant leaves of absence -- in addition to and distinct from sick leave -- to school employees. The statute recognizes a board of education's right "to fix either by rule or by individual consideration, the payment of salary in cases of absence not constituting sick leave," without limitation. N.J.S.A. 18A:30-7. The Legislature could have limited the boards' power in this regard by enumerating specific categories of leaves of absence in

23

the statute, but it declined to do so.  The legislative goal is clear:  to afford to boards of education expansive authority to make rules or individual determinations with respect to such leaves of absence.  Ibid.

   We are unpersuaded by the Appellate Division's interpretation of the word "absence" in N.J.S.A. 18A:30-7 to exclude release time on the ground that the releasees perform their Association-related duties on District property, and are not "absent" from that property during their working hours.  Rozenblit, 461 N.J. Super. at 28-29.  It is undisputed that a teacher assigned to release time does not teach students as he or she otherwise would.  That teacher, "absent" from his or her ordinarily assigned duties during that period, is paid a salary and afforded benefits by the District.  That arrangement constitutes a paid leave of absence for the teacher, and is within the description of "absence not constituting sick leave" under N.J.S.A. 18A:30-7.[4]

---

[4]  In its application of N.J.S.A. 18A:30-7, the Appellate Division relied on its decision in Board of Education of Piscataway v. Piscataway Maintenance & Custodial Association, 152 N.J. Super. 235 (App. Div. 1977).  There, the Appellate Division held that a board of education has discretion under N.J.S.A. 18A:30-6 to grant extended disability benefits on a case-by-case basis as a matter of managerial prerogative, but that a grant of such benefits as a matter of right was not negotiable in collective bargaining.  Id. at 246-49.  Although the Appellate Division considered language in N.J.S.A. 18A:30-7 addressing sick leave in Piscataway Maintenance, it did not consider the portion of the statute that addresses leaves of absence other than sick leave, and that decision is accordingly irrelevant to this appeal.  See id. at 241-49.

24

We do not share the Appellate Division's view that N.J.S.A. 18A:30-8's mandated paid leave for school employees competing in certain international athletic competitions evinces the Legislature's intent not to authorize boards of education to grant paid leave in the release time setting under N.J.S.A. 18A:30-7. See Rozenblit, 461 N.J. Super. at 31. Boards of education are not authorized but required to grant paid leave to athletes who qualify under N.J.S.A. 18A:30-8. Accordingly, such leaves of absence do not constitute "absence not constituting sick leave" under N.J.S.A. 18A:30-7, which school boards are permitted at their discretion -- but not required -- to grant. Nothing in N.J.S.A. 18A:30-8 suggests legislative intent to limit school boards' discretion to grant leaves of absence in other settings in accordance with N.J.S.A. 18A:30-7.

Our construction of N.J.S.A. 18A:30-7 to encompass release time furthers the Legislature's intent that boards of education make rules "for the government and management of the public schools and public school property of the district and for the employment, regulation of conduct and discharge of [their] employees." N.J.S.A. 18A:11-1(c). It also comports with the Legislature's expansive grant of power to boards of education to make, change, amend, or repeal rules "governing the employment, terms and tenure of employment, . . . and salaries and time and mode of payment thereof of

teaching staff members for the district." N.J.S.A. 18A:27-4.[5] The Board's

agreement that two District employees would devote their time to resolving

disputes, collective bargaining, and other labor-related issues constitutes a rule

governing the employment, terms, and tenure of the releasees.

Finally, interpreting N.J.S.A. 18A:30-7 to encompass release time

promotes the goals of the EERA. The record presented to the trial court

indicates that the releasees spend approximately seventy percent of their

working hours attempting to resolve grievances and other disputes between

teachers and school administration. Based on that record, it appears that

release time promotes the EERA's primary objective: "the prevention or

prompt settlement of labor disputes," in order to forestall "strikes, lockouts,

work stoppages and other forms of employer and employee strife" that waste

public resources and hamper public education. N.J.S.A. 34:13A-2. The

release time provisions at issue are also consistent with the Legislature's

---

[5] Our decision in Fair Lawn, in which we held that a school board was unauthorized by N.J.S.A. 18A:27-4 or N.J.S.A. 34:13A-5.3 to agree to a plan incentivizing employees to retire early, does not support the Appellate Division's construction of N.J.S.A. 18A:30-7. See 79 N.J. at 579-88. In Fair Lawn, the early retirement benefits in dispute were premised upon the employee's age and bore "no relation" to the employee's service. Id. at 580-81. Moreover, those benefits were preempted by the comprehensive legislative scheme that provided for retirement benefits. Id. at 579, 586-87. Neither of those considerations is at issue in this appeal.

26

declaration in the EERA that "rules governing working conditions" be negotiated in collective bargaining.  N.J.S.A. 34:13A-5.3.

Further, our construction of N.J.S.A. 18A:30-7 is consonant with our jurisprudence and PERC scope-of-negotiations determinations over many years.  As we noted in the setting of a dispute over vacation time, "[l]eave time for employees in the public sector is a term and condition of employment within the scope of negotiations, unless the term is set by a statute or regulation."  Headen, 212 N.J. at 445-46.  In scope-of-negotiations determinations conducted pursuant to N.J.S.A. 34:13A-5.4, PERC has repeatedly held that release time is a mandatorily negotiable term in collective negotiation agreements; it has observed that such a term "can improve representation and promote [EERA's] public purposes," and that release time agreements are "authorized by [EERA] and are not unconstitutional."  In re Brick Twp. Bd. of Educ., P.E.R.C. I.R. No. 2011-31, 37 NJPER ¶ 13, 2011 N.J. PERC LEXIS 159 at 12 (2011) (quoting In re City of Newark, P.E.R.C. No. 90-122, 16 N.J.P.E.R. ¶ 21164, 1990 N.J. PERC LEXIS 228 at 17 (1990)); see also In re Maurice River Twp. Bd. of Educ., P.E.R.C. No. 87-91, 13 N.J.P.E.R. ¶ 18054, 1987 N.J. PERC LEXIS 220 at 5-6 (1987); In re State, P.E.R.C. No. 86-16, 11 N.J.P.E.R. ¶ 16177, 1985 N.J. PERC LEXIS 157 at 21-22 (1985); In re Town of Kearny, P.E.R.C. No. 82-12, 7 N.J.P.E.R. ¶ 12202,

1981 N.J. PERC LEXIS 267 at 5 (1981); In re Town of Kearny, P.E.R.C. No. 81-70, 7 N.J.P.E.R. ¶ 12006, 1980 N.J. PERC LEXIS 210 at 5-6 (1980); In re Haddonfield Bd. of Educ., P.E.R.C. No. 80-53, 5 N.J.P.E.R. ¶ 10, 1979 N.J. PERC LEXIS 148 at 9-16 (1979).

In short, we view the Board's agreement to the CNA's release time provisions to be authorized by the plain language of N.J.S.A. 18A:30-7, construed in conjunction with two related provisions of the Education Code, N.J.S.A. 18A:27-4 and N.J.S.A. 18A:11-1(c), and with a core provision of the EERA, N.J.S.A. 34:13A-2. We accordingly disagree with the Appellate Division's conclusion that the Board's actions in agreeing to those provisions and paying the salaries and benefits of the releasees were unauthorized by statute and thus ultra vires.

## C.

## 1.

We next consider plaintiffs' constitutional challenge, based on the Gift Clause, to the payment of the releasees' salaries and benefits pursuant to the CNA. We review the trial court's constitutional determination de novo. Gormley v. Wood-El, 218 N.J. 72, 87 (2014).[6]

---

[6] The trial court applied a heightened standard that applies to constitutional challenges to legislative acts. See Gangemi, 25 N.J. at 10 ("[A] legislative act will not be declared void unless its repugnancy to the constitution is clear

28

Two provisions of the New Jersey Constitution -- Article VIII, Section 3, Paragraph 2, and Article VIII, Section 3, Paragraph 3, are relevant to our determination.[7]  The first of those provisions states that

> [n]o county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation.
>
> [N.J. Const. art. VIII, § 3, ¶ 2.]

The second states that "[n]o donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever."  N.J. Const. art. VIII, § 3, ¶ 3.

The Gift Clause provisions were "added to the Constitution when it was amended in 1875 because of 'a number of abusive practices that occurred

---

beyond reasonable doubt.").  Plaintiffs, however, did not argue before the trial court that N.J.S.A. 18A:30-7 contravenes the Gift Clause; they challenged the action of the Board, not a statute enacted by the Legislature.  Accordingly, the trial court should not have applied the heightened standard prescribed by Gangemi to plaintiffs' constitutional claims.

[7]  Plaintiffs also rely on Article VIII, Section 2, Paragraph 1, which provides that "[t]he credit of the State shall not be directly or indirectly loaned in any case," but plaintiffs make no claim that the State's credit was implicated in the release time provisions at issue.  That provision is thus irrelevant to this appeal.

during the nineteenth century when railroads and other private corporations were provided direct public assistance to the serious detriment of the taxpayers under the guise of "encouraging development."'" Gourmet Dining, LLC v. Union Township, 243 N.J. 1, 17-19 (2020) (quoting State Bar Ass'n v. State, 382 N.J. Super. 284, 318 (Ch. Div. 2005)). The Gift Clause was "intended to signal 'the retreat to a fundamental doctrine of government, i.e., that public money should be raised and used only for public purposes.'" Davidson Bros., Inc. v. D. Katz & Sons, Inc., 121 N.J. 196, 216 (1990) (quoting Roe, 42 N.J. at 207).

In Roe, this Court upheld the constitutionality of the New Jersey State Area Redevelopment Assistance Act, L. 1962, c. 204, a statute designed to "relieve areas of substantial and persistent unemployment through financial aid." 42 N.J. at 212. Addressing the plaintiff's contention that the statute violated the Gift Clause because it authorized public loans and advances to private redevelopment projects, the Court identified two questions to be determined:

> (1) Is legislative provision for financial aid to relieve unemployment a public purpose, and (2) if so, is the method of relief provided in this instance so consonant with the accomplishment of that public purpose as to be beyond the limitations on the use of public money laid down by Article VIII of the Constitution?

30

[Ibid.]

As we recently summarized the test, a court addressing a Gift Clause challenge "must first determine whether the provision of land or financial aid is for a public purpose, and second, whether the means to accomplish that public purpose are consonant with it." Gourmet Dining, 243 N.J. at 18.

For purposes of the first inquiry, courts consider whether the disputed activity "serves as a benefit to the community as a whole" and is, at the same time, "directly related to the functions of government." Roe, 42 N.J. at 207; see also Horsemen's Benevolent& Protective Ass'n v. Atl. City Racing Ass'n, 98 N.J. 445, 452-53 (1985) (holding that the record demonstrated that payments to a private association served a public purpose, because that association "contributes to the maintenance and well-being of the horseracing industry," which in turn "contributes to the general welfare of the State"); N.J. Mortg. Fin. Agency v. McCrane, 56 N.J. 414, 421-24 (1970) (recognizing that a state agency that gave the proceeds of tax-exempt bonds to private lenders for residential mortgage loans served the public purpose of addressing a residential housing crisis).

In Roe, the Court held that the second inquiry required the resolution of two subsidiary questions. Id. at 212. First, a court deciding a Gift Clause challenge must determine whether "the transaction, involving the transfer of

31

public money" was "contractual in nature." Id. at 218. As a corollary to that question, the court must consider whether the transaction is "based upon a substantial consideration from the recipient of the money apart from simply an obligation to repay the money with interest, which consideration is intimately associated and burdened with execution of the public purpose of the statute." Ibid. Second, the court must decide whether "the agreement of the recipient of the financial assistance to accomplish the public purpose of the statute, i.e., relief of unemployment, [is] the paramount factor in the contract" and whether "any private advantage [is] incidental and subordinate." Ibid. As we recently noted, the second prong of the Roe test is

> understood as having two parts: "whether the transaction is contractual and involves some obligation on the part of the private entity that is intimately tied to fulfilling the public purpose, and whether the accomplishment of the public purpose is the paramount factor in the contract with any private advantage being merely incidental or subordinate."
>
> [Gourmet Dining, 243 N.J. at 18-19 (alteration omitted) (quoting State Bar Ass'n, 382 N.J. Super. at 318).]

As the Court noted in Roe, "the circumstance that some private benefit may be derived from the loan of public money as an incident of its use in the execution of a paramount public purpose will not bring the statutory

32

authorization for the financial assistance within the constitutional ban." 42 N.J. at 218.

2.

We apply that two-pronged constitutional standard in the setting of the argument advanced in this appeal.

The record presented in this case establishes that there is a CNA between the union and Board, and a challenge to a particular benefit that we are urged to analyze in isolation. We address the constitutional issue as raised; however, in assessing the alleged impermissible private benefit, the challenged benefit cannot be entirely severed from its context. The provision is part of an agreement as a whole.

With that context in mind, and to address the specific argument advanced by plaintiffs, this record demonstrates, first, that the challenged release time serves public purposes expressly recognized by the Legislature. Cf. Davidson Bros., 121 N.J. at 218-19 (remanding for factfinding because the affidavits in the record articulated a public need for a proposed supermarket only "in very general terms," and the record was inadequate). The releasees' intervention in grievances, disciplinary issues, and other employer-employee matters facilitates "the prevention or prompt settlement of labor disputes," thus promoting "employer-employee peace." N.J.S.A. 34:13A-2; see also Local

195, 88 N.J. at 409 (noting that "discussion[s] between public employers and employees . . . are valuable and should be fostered"). The releasees mediate disputes between the District and employees, routinely at the request of school officials, and they attempt to resolve disagreements over District policies by discussing those policies with employees and administrators.

The releasees also work to enhance the collective bargaining process, recognized by the Legislature to "promote labor stability in the public sector and enhance the delivery and avoid the disruption of public services." N.J.S.A. 34:13A-5.12; see also In re Robbinsville Twp. Bd. of Educ. v. Washington Twp. Educ. Ass'n, 227 N.J. 192, 204 (2016) (recognizing the benefits of collective bargaining between a school board and its employees).

In short, the District's payment of salaries and benefits to the releasees serves a public purpose, thus satisfying the first prong of the Roe test. See Gourmet Dining, 243 N.J. at 18-19; Roe, 42 N.J. at 207.

With respect to the second prong, the transaction at issue is indeed "contractual and involves some obligation on the part of the private entity that is intimately tied to fulfilling the public purpose," thus entailing sufficient consideration to satisfy the Gift Clause. See Gourmet Dining, 243 N.J. at 18; see also Roe, 42 N.J. at 218-19. The release time arrangement is part of an agreement arrived at through collective negotiations in which the Association

34

made concessions in return for provisions that it sought. It is one of many provisions of the CNA bargained for through the collective negotiations process.

Although that agreement does not set forth in detail the manner in which the releasees fulfill their responsibilities, their duties directly relate to the resolution of employer-employee disputes and the promotion of labor peace. Indeed, as Greco noted, a second full-time releasee was added in 1998 at the request of school administrators, not the Association.

As Greco's certification indicated, his and Thorp's work assignments regularly originate with a request by the District or school administrator. He certified that he and Thorp report to the District about those assignments and any leaves of absence they take, and that they routinely apprise a District official of the nature and location of their work at any given time. The two releasees are routinely required to attend meetings initiated by the District or school officials.[8] In short, the record supports the Association's contention that the District maintains sufficient oversight of the releasees' duties to ensure

---

[8] Greco and Thorp stated that they are not required to formally account for their time to the District by "punching a clock or filling out timesheets," but Greco maintained that such practices are unnecessary because District officials "fully know that Ms. Thorp and I are fulfilling our duties."

35

that the public purpose is served, and that the releasees provide services of significant value to the District.

Finally, we address the question whether achieving the public purpose is the paramount factor in the disputed agreement, "with any private advantage being merely incidental or subordinate." Gourmet Dining, 243 N.J. at 18-19; see also Roe, 42 N.J. at 218. Here, the Association indisputably benefits from the full-time contributions of Greco and Thorp, and the releasees clearly perform tasks at the Association's direction. The record makes clear, however, that the releasees' primary assignment is to engage with District personnel and Association members in an effort to resolve labor disputes at an early stage, that they are routinely asked by District or school officials to intervene in specific settings, and that they report to the District on the results achieved. We view the public purpose of the release time provision to be the paramount factor in that provision, as it is applied in the day-to-day operations of the District.

In sum, we hold that the release time provisions conform to the standard of Roe and Gourmet Dining, and that those provisions do not constitute gifts to the Association in violation of Article VIII, Section 3, Paragraph 2 and Article VIII, Section 3, Paragraph 3 of the New Jersey Constitution.

36

IV.

The judgment of the Appellate Division is reversed, and the trial court's judgment dismissing plaintiffs' claims is reinstated.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.